ROHNER GEHRIG COMPANY, INC., Plaintiff–Appellee,

v.

TRI–STATE MOTOR TRANSIT, Defendant–Appellant.

No. 89–6246.

United States Court of Appeals, Fifth Circuit.

Jan. 7, 1992.

---

limited availability is an essential element of the special expertise factor.

Chris C. Pappas, Dunn, Kacal, Adams, Pappas & Law, Houston, Tex., Thomas V. Bender, Kyle E. Krull, Linde Thomsom Langworthy Kohn & Van Dyke, P.C., Kansas City, Mo., for defendant-appellant.

A. Douglas Shackelford, Jr., Billings & Solomon, Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, POLITZ, KING, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, EMILIO M. GARZA, and DeMOSS, Circuit Judges.[*]

WIENER, Circuit Judge:

Sitting en banc today, we reconsider issues addressed in the decision rendered by a divided panel of this court in *Rohner*

[*] Judge Harold R. DeMoss, Jr. was sworn in after this case was argued to the En Banc Court and elected not to participate in this en banc decision.

*Gehrig Co. v. Tri–State Motor Transit.*[1] There, the panel majority reversed the district court's grant of a summary judgment in favor of Rohner, the shipper of goods, and against Tri–State, the carrier of goods. In its summary judgment opinion the district court had recognized a principle not heretofore expressly adopted by this circuit: A carrier's bill of lading (B.O.L.) that substantially (as distinguished from strictly) complies with the tariffs the carrier has on file with the Interstate Commerce Commission (I.C.C.) may be sufficient to give the shipper the required opportunity to choose between levels of carrier liability, thereby giving the carrier a concomitant opportunity to limit its liability to the shipper for damage or loss. Nonetheless, the district court found, on the basis of the undisputed summary judgment evidence, that Tri–State's B.O.L. neither strictly nor substantially complied with the tariffs. Consequently, the carrier was not entitled to limit its liability to the shipper.

The Panel Opinion unanimously affirmed the part of the district court's judgment that adopted the substantial compliance rule for this circuit. Nonetheless, the panel majority disagreed with the district court's finding that Tri–State's B.O.L. neither strictly nor substantially complied with its tariff. Relying in principal part on its determination that Rohner's shipping agent was "sophisticated" in the industry, the panel majority found substantial compliance by testing Tri–State's B.O.L. in light of the knowledge and experience of Rohner's agent. As such, the Panel Opinion found the B.O.L. sufficient to satisfy two of the four requirements under the test enunciated by the Seventh Circuit in *Hughes v. United Van Lines, Inc.*,[2] for establishing the carrier's right to limit its liability. The *Hughes* test requires a carrier to:

(1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtain the shipper's agreement as to his choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment.[3]

We agree with the panel's adoption of both the *Hughes* test and the substantial compliance rule for this circuit. But, agreeing with the panel dissent,[4] we reject the role of sophistication in determining under *Hughes* whether the B.O.L. complies substantially with the carrier's tariff and whether the carrier has thereby given the shipper a reasonable opportunity to choose between two or more levels of liability. Without such an opportunity the carrier cannot obtain from the shipper a valid agreement as to its choice of liability, causing the carrier to fail the *Hughes* test and thus be precluded from limiting its liability to the shipper.

I.

FACTS AND PROCEEDINGS

The operable facts and procedural history of this case are fully set forth in the Panel Opinion and do not bear reiteration here. It suffices to note briefly that Rohner, as consignee of the United States Air Force, consigned a crate of aircraft parts to Tri–State; that the printed form B.O.L. furnished by Tri–State was signed for Rohner by an employee who was an experienced shipping agent; that the B.O.L. contained the statement: "Unless a Greater Value is Declared, the Shipper Hereby Releases the Value to $5,000.00 Per Ton of 2,000 Pounds for Each Article"; that this statement was not set out in a special block and was not printed in boldfaced type, or in either the largest or smallest type size used on the B.O.L., or in heavy line type style, but was sandwiched between the box pro-

1. 923 F.2d 1118 (5th Cir.1991) (hereinafter the Panel Opinion).

2. 829 F.2d 1407 (7th Cir.1987), *cert. denied*, 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988). Tri–State's satisfaction of the first and fourth prongs of the *Hughes* test was never in dispute.

3. *Id.* at 1415 (citing *Antonio v. Greyhound Van Lines, Inc.*, 591 F.2d 103 (1st Cir.1978)).

4. *Rohner Gehrig Co.*, 923 F.2d at 1123–27 (Wiener, J., concurring in part and dissenting in part).

vided on the B.O.L. for the description and weight of the goods to be shipped and the block provided on the B.O.L. for the shipper's signature and related time and date information; that the B.O.L. contained no other reference to limitation of liability; and that the B.O.L. contained no block or space for the shipper to insert a declared or released valuation, alternate rate, signature, or the like.

## II.

## ANALYSIS

A. *The Tariff System*

In 1906, in the so-called Carmack Amendment, now codified at 49 U.S.C. § 11707 (Supp.1990), Congress absolutely forbade carriers to limit their liability to shippers for damage to goods. As a result of this legislation, the carriers increased shipping rates sharply. Congress reacted to this rate increase by enacting the so-called Cummings Amendment, now codified at 49 U.S.C. § 10730 (Supp.1990), which allows a carrier to limit its liability if it complies with I.C.C. approved rates through tariffs filed by the carrier with the I.C.C.[5]

Therefore, under the I.C.C. scheme, if a carrier desires to limit its liability it must file one or more tariffs that set forth terms and conditions of shipment, freight rates available, and information relevant to shipping, including limitation of liability. Central to the scheme of limitation of liability is the requirement that each rate listed in the tariffs specify a "released rate," which is the maximum dollar liability per unit of weight for which the carrier will be liable. Also central to the I.C.C.'s liability limitation scheme is the requirement that there be a written agreement between the shipper and the carrier. The B.O.L. is the form most frequently used for such agreements. If the carrier is to limit its liability, the written agreement between shipper and carrier must contain a so-called "inadvertence clause." The inadvertence clause specifies the released rate and states that such rate will apply unless the shipper declares otherwise.

A statement in Tri–State's B.O.L. (quoted in the first paragraph of Section I above) purports to satisfy the inadvertence clause requirement. This statement, however, differs notably from Tri–State's tariffs as filed with the I.C.C.: NAS 203–A (the rate tariff), and NAS 190–A (the rule tariff).

Item 856 in Tri–State's rate tariff provides, *inter alia,*

> One of the Conditions set forth in such bill of lading is the following sentence which appears in bold-face type on the face thereof, "WHEN RATES ARE SUBJECT TO A RELEASED RATES ORDER, UNLESS A GREATER VALUE IS DECLARED, THE SHIPPER HEREBY RELEASES THE VALUE TO $5,000 PER TON OF 2,000 POUNDS FOR EACH ARTICLE.

Despite that unequivocal statement in the rate tariff as to what the shipper will find in the B.O.L., the one that Tri–State furnished Rohner reflects no such boldfaced, capitalized inadvertence clause. Neither does the purported inadvertence clause in Tri–State's B.O.L. contain the tariff's boldfaced, capitalized introductory phrase, "WHEN RATES ARE SUBJECT TO A RELEASED RATES ORDER, ..."

Additionally, in Items 360–1 and 360–3, Tri–State's rule tariff sets forth the "Uniform Straight Bill of Lading." Those Items not only contain the same boldfaced inadvertence clause found in the rate tariff, they also reflect that each B.O.L. will contain the following typical released rate blank for use by the shipper:

> The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding _____ per

Again, despite that unequivocal statement in Tri–State's rule tariff, the preprinted B.O.L. furnished by Tri–State to Rohner contained nothing even approximating a released rate blank, much less that one from the rule tariff. No blank or block or other space was provided on Tri–State's B.O.L. for Rohner's use in declaring a higher, alternate valuation for purposes of increas-

---

**5.** These provisions are cited in the Panel Opin- ion, *id.* at 1120 nn. 2 & 3.

ing the liability (decreasing the limitation of liability) of Tri–State as the carrier.

## B. *Interpretation*

Were this simply a case of interpreting a bilateral agreement signed by duly authorized agents of the contracting parties, we might well find the provisions of the B.O.L. sufficient to limit the liability of the carrier. But this is not such a case; rather we are dealing with the shipment of goods in interstate commerce. The strictures imposed by Congress and the I.C.C. take the instant case out of the realm of common law contractual interpretation and subject it to federal statutory and regulatory interpretation. When it adopted the Carmack Amendment eighty-five years ago, Congress expressed a public policy against limitation of liability by carriers. The absolute prohibition of limitation was softened ever so slightly when Congress adopted the Cummings Amendment, admitting a narrow exception to that public policy. Our task today is to determine whether Tri–State complied with that exception.

## C. *Testing for a Reasonable Opportunity for the Shipper to Choose*

■ Like any exception to public policy, the one wrought by the Cummings Amendment must be construed narrowly. Only by following the rules established by the I.C.C. may a carrier limit its liability. And those rules, as noted above, require the filing of tariffs by the carrier and the use of a written agreement—here the B.O.L.—that complies with the provisions of the tariff.

We agree with the Panel Opinion that in every limitation of liability case under the Cummings exception, the scrutinized transaction must be tested under the four-pronged *Hughes* test. It follows that in the great majority of those cases, which as here comprise an isolated transaction in which a carrier uses its own pre-printed B.O.L. as the shipping agreement and as the signed evidence of the shipper's choice

of the level of the carrier's liability, the B.O.L.'s compliance with the carrier's tariffs is the core concern. As there is no question but that Tri–State maintained a tariff within the prescribed I.C.C. guidelines and that Tri–State issued its B.O.L. to Rohner as a receipt prior to moving the shipment, Tri–State obviously passed the first and fourth prongs of the *Hughes* test. Thus the question before this court is embodied in the second and third elements of the *Hughes* test: whether Tri–State gave Rohner a reasonable opportunity to choose between two or more levels of liability, and obtained Rohner's agreement as to its choice of liability. The choice of liability is inextricably intertwined with a reasonable opportunity to choose, so the focal point of our inquiry is whether Tri–State's proffered B.O.L. gave Rohner a "reasonable opportunity to choose between two or more levels of liability." [6]

## D. *The B.O.L.'s Compliance with the Tariffs*

■ Although it is axiomatic that a B.O.L. may either strictly comply with the carrier's tariff or totally fail to comply, there is a third possibility—substantial compliance. The Panel Opinion stated that "[a]lthough this court has not ruled on this precise issue, it and others have enforced bills of lading that substantially (rather than strictly) comply with their related tariffs." [7] Lest there remain any doubt, we confirm the conclusion voiced in the Panel Opinion that a B.O.L. that substantially complies with its related tariffs may support limitation of the carrier's liability to the same extent as would the same B.O.L. were it in strict compliance with such tariffs. Therefore, the sole remaining legal issue before us is whether the B.O.L. tendered by Tri–State and signed by Rohner's agent on behalf of Rohner (a) strictly complied, (b) substantially complied, or (c) failed to comply, with Tri–State's tariffs. We conclude, as did the district court and the panel dissent, that the subject B.O.L.

---

6. *Hughes*, 829 F.2d at 1415.

7. 923 F.2d at 1121 (citing as examples *Robinson v. Ralph G. Smith, Inc.*, 735 F.2d 186, 190 (6th Cir.1984), and *Strickland Transp. Co. v. United States*, 334 F.2d 172 (5th Cir.1964)).

neither strictly nor substantially complied with Tri–State's tariffs.

In granting Rohner's motion for summary judgment, the district court correctly approached the "reasonable opportunity to choose" question by *objectively* testing Tri–State's B.O.L. for compliance with its filed tariffs. The court compared the B.O.L. with the tariffs and found, correctly we believe, that "Tri–State's Bill of Lading fails to even substantially comply with the tariff." Properly, the district court did not require strict compliance but did require at least substantial compliance.

■ An objective determination of whether, facially, the B.O.L. strictly or substantially complies with the tariff is the threshold question in a case such as the one we now consider. We suggest that the panel majority went awry when it followed Tri–State's "red herring" of *sophistication* of the shipper as an element to be considered in determining the issue of the B.O.L.'s substantial compliance for purposes of the "reasonable opportunity" prong of the *Hughes* test.

When the panel majority reversed the district court's finding that Tri–State's B.O.L. neither strictly nor substantially complied with its tariffs and thus lacked the notice that fairness requires, the panel reasoned that "[t]hat, however, is not apparent without considering the shipper's sophistication and state of mind."[8] This is the point at which we part company with the panel majority. Under the Carmack/Cummings scheme, the narrow gate through which the carrier must pass to be eligible for limitation of liability is the one prescribed by the I.C.C.: acceptable tariffs filed with the I.C.C., coupled with a B.O.L. that complies with the tariff. That narrow gate never swings open to the carrier whose B.O.L. is *objectively* determined not to comply, at least substantially, with its tariff. To consider sophistication or other subjective qualities of the parties in testing the B.O.L. for substantial compliance is to subsume the I.C.C. tariff scheme and the *Hughes* test as well. The subjective qualities of the shipper, particularly those of the

shipper's employee or agent, simply have no bearing on substantial compliance of the carrier's B.O.L. with its tariffs nor with the second and third prongs of the *Hughes* test.

■ We agree with Tri–State and with the panel majority that substantial compliance does not rise or fall solely on whether the inadvertence clause is or is not printed in boldface type. But that is merely one item on a lengthy, non-exclusive list of indicia against which courts should test the B.O.L. for compliance with the tariff. In the instant case, Tri–State's B.O.L. came up woefully lacking—its inadvertence clause was not printed in boldface type, was a truncated version of the sample contained in the tariff, was not set off in an enclosed block or box, was not printed in a distinctively large or small type size, and was located inconspicuously between the box provided for the description and weight of the goods to be shipped and the block provided for the shipper's signature. The B.O.L. contained no other reference to limitation of liability, and, more importantly, it contained no box, block, or other space in which the shipper might insert a different declared or released valuation, alternate rate, signature, date, or other information to substantiate a shipper's choice of a different release rate.

Like the district court, we find that Tri–State's B.O.L. did not substantially comply, much less strictly comply, with its posted and published tariffs. When that determination is made in a routine shipping case such as the one before us—a "one shot" transaction in which a carrier with properly posted tariffs presents one of its standard, printed B.O.L.s to a shipper who merely "signs on the dotted line"—the carrier fails the second and third prongs of the *Hughes* test: The shipper has not been given a *reasonable* opportunity to choose between two or more levels of liability, so it follows that any agreement purportedly obtained from the shipper as to its choice of liability when its agent signs the B.O.L. is worthless. Under those circumstances, ques-

8. *Id.* at 1122.

tions of sophistication or other subjective qualities of the parties are never reached.

To administer the second and third prongs of the *Hughes* test on the basis of subjective qualities of the parties, such as sophistication, when the court's task is to determine whether a B.O.L. that does not strictly comply with its tariff might be in substantial compliance is error. More to the point, even if this were a situation in which the shipper's sophistication and state of mind were relevant (which it is not), testing the sophistication of the shipper by examining the sophistication and experience of the particular employee who happens to sign the B.O.L. then under consideration would be error.

In so holding, we should not be understood to say that, under distinctively different fact patterns, sophistication and other subjective attributes of the shipper and carrier may not be the proper subject of inquiry. We are simply not faced with such a situation here. We find the cases relied on by the panel majority inapposite because the factual situations in those cases are distinguishable from the instant "plain vanilla" shipper/carrier transaction. In avoidance of redundancy, we incorporate by reference the discussion of that jurisprudence set forth in the panel dissent.[9]

To permit a carrier to limit its liability by furnishing to a shipper a B.O.L. which facially neither strictly nor substantially complies with the carrier's tariff, simply because the shipper or the shipper's agent is found to be experienced or sophisticated in the shipping industry, would be to render nugatory the intentionally objective and restrictive law of limitation of liability that Congress has maintained as a matter of public policy lo these many decades. That a given case may produce a windfall for a shipper or a loss for a carrier is not the point; the integrity of the scheme mandated by Congress and implemented by the I.C.C. is paramount. If the Cummings Amendment's narrow exception to the long-standing statutory proscription of limitation of liability is now to be transmuted into a broad, freewheeling exception—one that essentially emasculates the prohibition and forces every case to be decided on a highly fact-intensive, individual basis—it is for Congress and not the courts to make such a sweeping change in public policy.

### III.

### CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of a summary judgment in favor of Rohner and against Tri–State, and REMAND this case to the district court for final disposition consistent with this opinion.

GARWOOD, Circuit Judge, with whom EDITH H. JONES, Circuit Judge, joins, dissenting:

The difficulty with the majority opinion is that it is not grounded in the statutory language.

Under the statutory scheme, a motor carrier is authorized to limit its liability for damages to goods in shipment to the amount of the shipper declared value, provided only that the following three conditions are met:

(1) there must be a "written declaration of the shipper" or "a written agreement" specifying the limited liability value;

(2) there must be a filed tariff establishing a rate for the limited liability value;

(3) it is required that the "value would be reasonable under the circumstances surrounding the transportation."[1]

---

**9.** *Id.* at 1125–26.

**1.** 49 U.S.C. § 10730 provides in relevant part:
 "(a) The Interstate Commerce Commission may require or authorize a carrier ... to establish rates for transportation of property under which the liability of the carrier for that property is limited to a value established by written declaration of the shipper, or by a written agreement, when that value would be

reasonable under the circumstances surrounding the transportation...."
 "(b)(1) ... [A] motor common carrier ... may, subject to the provisions of this chapter (including, with respect to a motor carrier, the general tariff requirements of section 10762 of this title), establish rates for the transportation of property (other than household goods) under which the liability of the

Nothing in the statute (nor in any regulation cited to us) says that the referenced written declaration or agreement must be either a bill of lading, or in a form specified in a tariff. Indeed, the majority opinion implicitly recognizes that there is no such requirement.

The majority nevertheless holds for the shipper as a matter of law on the ground that the carrier failed the case law requirement that the shipper have had "a reasonable opportunity to choose between two or more levels of liability." *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415 (7th Cir.1987), *cert. denied*, 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988). This judicial requirement obviously rests on the statutory provision that the limited value "be reasonable under the circumstances surrounding the transportation." That requirement, to which shipper sophistication or its absence has obvious potential relevance, cannot fairly be understood as always mandating some particular specified form for the necessary written declaration or agreement.

Here the bill of lading, signed by the shipper's agent, contained a clear and express provision stating that the declared value was $5,000 a ton and that the carrier's liability was so limited unless a greater value were declared. This provision appeared almost immediately above the place for the shipper's signature on the bill of lading. The panel majority held that a sophisticated, commercial shipper would be bound by this language if he knew or should have known that he could declare a higher value (and pay a correspondingly higher rate), notwithstanding that the bill of lading did not have a special blank for the shipper to write in a higher declared value, as the carrier's tariff called for it to have.

This is a simple suit between the immediate parties—shipper and carrier—to shipment on a nonnegotiable bill of lading. Nothing more is involved or presented. In such a case, it seems wholly unremarkable to hold someone to the clear and express terms of his written agreement, which does not violate and is expressly authorized by the statute, when that party is sophisticated and understands the agreement and the options available to him.

Neither the statutory language, nor any reported decision cited by the majority, support its contrary holding. Accordingly, I respectfully dissent.

---

carrier or freight forwarder for such property is limited to a value established by written declaration of the shipper or by written agreement between the carrier or freight forwarder and shipper if that value would be reasonable under the circumstances surrounding the transportation."

49 U.S.C. § 10762(a)(1) provides in relevant part: "A motor common carrier shall publish and file with the Commission tariffs containing the rates for transportation it may provide under this subtitle. The Commission may prescribe other information that motor common carriers shall include in their tariffs."

49 U.S.C. § 11707(a)(1) provides for liability of the carrier for damage to the property, and § 11707(c) provides in relevant part:

"(c)(1) A common carrier and freight forwarder may not limit or be exempt from liability imposed under subsection (a) of this section except as provided in this subsection. . . .

" . . .

"(4) A common carrier may limit its liability for loss or injury of property transported under section 10730 of this title."