|.jWILLIAMS, Judge.
The plaintiff, Gene Grigg, appeals a judgment limiting his recovery to the rate of ten cents' per pound for the items lost during shipping by the defendant, SAIA Motor Freight Line, Inc. (“SAIA”). The trial court denied plaintiffs claims for damages and attorney fees. For the following reasons, we reverse and render.
FACTS
On February 10,1995, Gene Grigg contacted SAIA, an interstate carrier, to arrange for a shipment of goods from Bienville Parish, Louisiana, to Pasadena, Texas. Grigg, the shipper, completed the Uniform Straight Bill of Lading, in which he described the items to be shipped as one carton of instruments, one used Actuator and one used Fisher Butterfly valve, with a total weight of 190 pounds. Grigg did not list a monetary value for these parts on the bill of lading. The goods were lost during delivery while in the carrier’s possession. On March 2,1995, Grigg submitted to SAIA a damage claim form for $1,710, an amount reflecting the purchase, price of the lost parts.
Citing its Tariff No. 170, which was in effect on the date of shipment, SAIA responded that it owed Grigg only ten cents per pound for the weight of the items lost, for a total amount of $19.00. This amount was deposited by SAIA into the Registry of the District Court after Grigg refused payment. Tariff 170, Item 108, states that when a “consignor fails to declare a released value” at the time of shipment, it is subject to the lowest release value, which is the maximum dollar liability per unit of weight for which the carrier will be liable. In such a situation, the tariff provides that used machinery or parts are limited to a value of ten cents per pound.
The plaintiff, Gene Grigg, filed this action against SAIA to recover the value of the lost items, the additional amount paid to replace the lost parts, and ^damages for SAIA’s refusal to timely pay his claim. Plaintiff also sought attorney fees and court costs. The parties stipulated that the value of the shipped parts was $1,710 and that the replacement cost was $2,943.
The trial court took the matter under advisement. In its written reasons for judgment, the trial court found that plaintiff contacted SAIA to arrange an interstate shipment of goods, that he did not include the value of the items in the bill of lading, and that SAIA had not acted in bad faith. The court concluded that plaintiff was entitled to recover only ten cents per pound for the items lost, and denied his claims for damages and attorney fees. Plaintiff appeals.
DISCUSSION
The Interstate Commerce Act contains several provisions governing a motor carrier’s liability to a shipper for the loss of, or damage to, an interstate shipment of goods. These provisions are commonly referred to collectively as the Carmack Amendment. North American Van Lines v. Pinkerton Security Systems, 89 F.3d 452 (7th Cir.1996). At the time of the relevant transaction in the present case, the provisions were contained in 49 U.S.C. §§ 10103, 11707, 10730.
Congress substantially reorganized and modified Title 49 in the Interstate Commerce Commission Termination Act of 1995, Pub.L. No.104-88,109 Stat. 803, effective January 1, 1996. That act preserved the existing Car-mack Amendment provisions governing carrier liability and recodified them at 49 U.S.C. § 14706. North American Van Lines, supra. We shall refer to those Title 49 sections which were in effect on the date of plaintiffs shipment, prior to the enactment of the ICC Termination Act.
The plaintiff argues that the Carmack Amendment does not preempt existing remedies under Louisiana law. In support of his argument, plaintiff cites Stacks v. Mayflower Transit, Inc., 95-693 (La.App. 3rd Cir. *899 11/2/95), 664 So.2d 566, which involved a dispute over a damaged interstate shipment. The court found that federal law did not preempt application of Louisiana law because the carrier failed at trial to introduce evidence concerning its maintenance of a valid tariff. However, the factual situation in Stacks, supra, can be distinguished from that of the present ease. Here, the parties stipulated at trial that the defendant’s tariff was valid and in effect on the date of the shipment. Thus, the court’s reasoning in Stacks cannot be utilized by the plaintiff to avoid the federal preemption of state law in the present situation.
In further support of his argument, plaintiff relies on 49 U.S.C. § 13103 (formerly codified at 49 U.S.C. § 10103), which states that the remedies provided in this part are in addition to remedies existing under another law or at common law. However, the United States Supreme Court has held, since Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913), that the Carmack Amendment, including the above-cited provision, preempts all state and common law remedies available to a shipper against a carrier for loss or damage to interstate shipments. North American Van Lines, supra; Hughes v. United Van Lines, Inc., 829 F.2d 1407 (7th Cir.1987). Therefore, in the present case, the Carmack Amendment precludes the plaintiff from seeking any remedy under Louisiana law against the defendant for the loss or damage of the interstate shipment. The assignment of error lacks merit.

Limitation of Liability

The plaintiff contends that even if the Car-mack Amendment preempts state law remedies, the trial court erred in finding that the defendant’s liability for the lost items was limited to ten cents per pound of the shipment weight. Plaintiff Largues that the bill of lading did not form a valid agreement to limit the carrier’s liability.
As noted previously, the Carmack Amendment governs the liability of a common carrier to a shipper for loss of an interstate shipment. At all times relevant to this dispute, 49 U.S.C. § 11707(a) provided that a common carrier transporting goods in interstate commerce shall issue a bill of lading for property received for transportation. That carrier is liable to the person entitled to recover under the bill of lading for the actual loss or injury to the property.
A carrier may establish rates for transportation of property under which the liability of the carrier for such property is limited to a value established by written declaration of the shipper, or by written agreement, when that value would be reasonable under the circumstances surrounding the transportation. 49 U.S.C. § 10730(c) (presently codified at 49 U.S.C. § 14706(c) (1996)). Under this provision, a carrier may negotiate limited liability in exchange for a reduced rate of transportation. North American Van Lines, supra. The bill of lading (B.O.L.) is the form most frequently used as the written agreement between the parties.
In order to limit its liability under the Carmack Amendment, a carrier must perform the following four steps: (1) maintain a tariff within the prescribed federal guidelines; (2) obtain the shipper’s agreement as to his choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment. Rohner Gehrig Co., Inc. v. TriState Motor Transit, 950 F.2d 1079 (5th Cir.1992); Hughes v. United Van Lines, Inc., supra.
In the present case, the parties have stipulated that the defendant maintained a tariff in compliance with the prescribed federal guidelines, and that defendant Rissued its B.O.L. to the plaintiff as a receipt prior to transporting the goods. As a result, the defendant has satisfied two of the four elements necessary to establish a valid liability limitation. Thus, the primary issue is whether the defendant’s bill of lading provided plaintiff with a reasonable opportunity to choose between different levels of liability. A bill of lading that substantially complies with its related tariffs may support limitation of the carrier’s liability. Rohner Gehrig, supra.
*900 The defendant’s tariff, SAIA170, Item 108, refers to used machinery or parts and provides that if the shipper fails to declare a released value at the time of shipment, it will be subject to the lowest released value, which is listed as ten cents per pound. In its brief, the defendant contends that the plaintiff was provided with sufficient notice of the applicable tariff. In support of its contention, the defendant relies on the following statement, which appears near the top of the B.O.L.: “RECEIVED, subject to the classifications and lawfully filed tariffs in effect on the date of the issue of this Bill of Lading.” The defendant also asserts that plaintiffs notice of the liability limitation was shown by his testimony that he was aware the carrier had filed tariffs with the government.
However, a carrier cannot limit liability by implication and must do more than merely show that it maintained appropriate tariff schedules with the federal government. There must be a deliberate and well-informed choice by the shipper. Bio-Lab, Inc. v. Pony Express Courier Corp., 911 F.2d 1580 (11th Cir.1990). Although the statement contained in the B.O.L. makes a general reference to tariffs, there is no evidence that the defendant provided plaintiff with any information, apart from the bill of lading itself, concerning the terms of the particular tariff provision on which defendant relies. The plaintiffs testimony regarding his general understanding that the carrier has filed tariffs with the ^government does not indicate an awareness of the specific liability limitation asserted by defendant. The foregoing sentence contained in the B.O.L. is not a sufficient basis to imply that the plaintiff was given a reasonable opportunity to choose between liability levels described in the tariff. The defendant’s contention lacks merit.
If the carrier seeks to limit its liability, the bill of lading must contain an inadvertence clause, which specifies the released value of the shipment and states that such value will apply unless the shipper declares otherwise. Rohner Gehrig, supra. Such a provision in a bill of lading is important in demonstrating that the shipper has been given a reasonable opportunity to choose between different liability levels.
The defendant’s pre-printed form B.O.L. contained the statement:
NOTE-Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property. The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding.
The defendant urges that this statement provided the plaintiff with a reasonable opportunity to choose between the different levels of liability reflected in the tariff.
Contrary to defendant’s assertion, a reasonable reading of the above-quoted statement does not inform the plaintiff that his failure to declare a value for the goods will result in a limitation of the carrier’s liability to a released value of ten cents per pound of the shipment. The only other reference to a limitation of liability found on the face of the B.O.L. is a statement, in bold type, that the released value of “household goods, furniture and personal effects” is not to exceed ten cents per pound. The facts show that plaintiff was shipping used machine parts, not the type of goods mentioned, and so did not have a reason to ^believe from reading the face of the B.O.L. that such a limitation would apply to his shipment. Thus, the B.O.L. lacks the inadvertence clause necessary to establish a valid limitation of the defendant’s liability.
In Rohner, the federal appellate court found substantial compliance lacking where the B.O.L. contained an inadvertence clause that did not conform to the tariff provisions, was not set out in boldface type, and was located between the box provided for the description of the goods to be shipped and the block for the shipper’s signature. Similarly in the present ease, the B.O.L. lacked an inadvertence clause notifying the shipper of the tariffs limited liability language, the statement which appeared on the B.O.L. was not printed in boldface type, was not set off in an enclosed box, and was placed inconspicuously between the block for the description and weight of the goods and the shipper’s signature line.
After reviewing the record, we find that the bill of lading does not substantially com *901 ply with the limitation of liability provisions of the defendant’s tariff. Thus, the defendant has failed to establish that plaintiff was given a reasonable opportunity to choose between two or more levels of liability, and any agreement purportedly obtained from plaintiff regarding his choice of liability is invalid. Therefore, we must conclude that the trial court was clearly wrong in finding that defendant’s liability was limited to the value of ten cents per pound of the shipment. Accordingly, the trial court’s judgment is reversed.

Damages

The plaintiff contends that he is entitled to recover the amount spent to replace the lost shipment, with attorney fees and costs. The defendant is liable to the plaintiff for the actual loss or injury to the property. 49 U.S.C. § 11707. Here, the shipment was lost and plaintiff was required to obtain replacement goods from | ganother source. The record does not contain any evidence that the plaintiff lost sales or profits. Thus, plaintiff is entitled to recover the expense of replacing the shipment, plus interest and court costs. The parties have stipulated that the replacement cost of the shipment was $2,943. Because the replacement cost can be discerned from the record, we render judgment in favor of plaintiff for the amount of $2,943, with interest from the date of judicial demand, and tax the costs of the trial court to the defendant. LSA-C.C.P. art. 2164.
Plaintiff also seeks to recover attorney fees. It is the general rule in the United States that in the absence of express statutory authority to the contrary, litigants must pay their own attorney fees. Boland Marine & Mfg. Co. v. Rihner, 41 F.3d 997 (5th Cir. 1995). Although the court awarded attorney fees to the shipper in Druncker v. O’Brien’s Moving & Storage Inc., 963 F.2d 1171 (9th Cir. 1992), that case can be distinguished from the present situation. In Drucker, the court applied 49 U.S.C. § 11707(d), which specifically provided for an award of attorney fees in actions involving a shipment of household goods. The present ease does not involve such a shipment and that provision is inapplicable. The plaintiff has not presented any other statutory authority for an award of attorney fees under the Carmack Amendment. The trial court did not err in denying plaintiffs claim for attorney fees.
DECREE
The trial court’s judgment is reversed and judgment is hereby rendered in favor of the appellant, Gene Grigg, for $2,943 with interest from the date of judicial demand. All costs are assessed to appellee, SAIA Motor Freight Line, Inc.
REVERSED AND RENDERED.