Robert ATWOOD, an individual, d/b/a Northwest Carbide Sales & Service, Plaintiff,

v.

U W FREIGHT LINE, INC., a Utah corporation; Roadway Express, Inc., a Delaware corporation; and John Doe and Jane Doe, Defendants.

No. CV 98–0229–S–BLW.

United States District Court, D. Idaho.

Nov. 29, 1999.

David G Ballard, Churchill Law Offices, Boise, ID, for Robert Atwood, plaintiffs.

Phil E De Angeli, Rob H Shockley, Jones Gledhill Hess Andrews, Fuhrman Bradbury & Eiden, Boise, ID, Barry L Marcus, Daniel R Hardee, Marcus Merrick & Montgomery, Boise, ID, William D Bierman, Nowell Amoroso Klein & Bierman, Hackensack, NJ, for U W Freight Line, Inc., Roadway Express Inc., John Doe, Jane Doe, defendants.

## ORDER AND REPORT and RECOMMENDATION

WILLIAMS, Chief United States Magistrate Judge.

Currently before the Court for its consideration are: 1) Plaintiff's motion for summary judgment (docket # 57), filed March 18, 1999; 2) Defendant UW Freight's motion to strike (docket # 66), filed March 31, 1999; 3) Defendant Roadway's motion for summary judgment (docket # 76), filed April 8, 1999; 4) Defendant Roadway's motion to dismiss (docket # 91), filed July 6, 1999; and 5) Defendant U W Freight's motion for summary judgment against Defendant Roadway (docket # 114), filed September 24,

1999. Having reviewed all briefing submitted, as well as other pertinent documents in the Court's file, and having heard oral arguments, the Court makes its Order and Report and Recommendation as follows.

## *REPORT*

### I.

### Background.

Plaintiff Robert Atwood, d/b/a Northwest Carbide Sales & Service, conducts business in Emmett, Idaho. On April 23, 1997, Atwood contracted with Defendant carriers U W Freight Line, Inc and/or Roadway Express, Inc. to transport a grinder from Emmett to Kirkland, Washington under the terms of a bill of lading. It is not disputed that U W Freight moved the grinder from Emmett to Boise, at Roadway's request, and Roadway moved it from Boise to Kirkland. The grinder arrived in Kirkland on May 1, 1997, but arrived in a damaged condition which Plaintiff alleges occurred while in the course of transportation due to the intentional, wilful, or negligent action of the carriers. However, there is not a strong factual dispute between the carriers that there did not appear to be any damage to the grinder at the time it was delivered to Roadway in Boise by U W Freight or that Roadway accepted the machine from U W Freight without question as to its condition. In the notice of cargo loss and damage claim, Plaintiff stated that the machine was improperly placed on an unstable pallet and that no lanyards were used to secure the pallet to the inside of the trailer. Consequently the machine toppled over during shipment. Roadway responded to Plaintiff's loss claim by issuing a check in the amount of $2,031.93, which covered a refund of the shipping fees and damage caused to the grinder paid at the rate of $1 per pound or $1,450.

Plaintiff alleges damages in the amount of $80,192.85 (the cost to replace the grinder) and for other consequential damages such as the costs Plaintiff incurred in hiring additional workmen to keep up with his client's requests for saw sharpening services without the use of the grinder. Plaintiff has demanded payment from both Defendants and both have refused to pay.

Defendants' position is that they have fully compensated Plaintiff for the loss in accordance with the bill of lading and tariffs which applied to this particular shipment. Defendants' further deny that they are liable for any consequential damages. They have also filed cross claims against one another for indemnification if either is found liable for damages.

### II.

### Summary judgment standard.

Motions for summary judgment are governed by Fed.R.Civ.P. 56. Rule 56, which provides in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [1]

The United States Supreme Court has made it clear that under Rule 56, summary judgment is required if the nonmoving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he/she will bear the burden of proof at trial.[2] If the nonmoving party fails to make such a showing on any essential element of his case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's

---

1. Fed.R.Civ.P. 56(c).

2. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

case necessarily renders all other facts immaterial."[3]

Under Rule 56 it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial,"[4] or when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5] The Ninth Circuit cases are in accord.[6]

In ruling on summary judgment motions, the court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations.[7] Moreover, all inferences must be drawn in the light most favorable to the nonmoving party.[8] As the Ninth Circuit Court of Appeals has stated, "[p]ut another way, if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied."[9]

### III.

### Plaintiff's motion for summary judgment.

Plaintiff seeks summary judgment on the grounds that there are no genuine issues of material fact concerning: 1) that the saw grinder was damaged while in possession of the motor carrier during

shipment; and 2) the liability of the motor carrier was not limited because there was no written agreement or other declaration to limit liability pursuant to 49 U.S.C. § 14706(c)(1)(A) to $1 per pound as asserted by the Defendants.

In 1906 Congress enacted the Carmack Amendment to the federal motor carriers statute so as to create a national policy regarding an interstate carrier's liability for property loss. At least eight circuits have held that the Carmack Amendment preempts state and common law claims and remedies for cargo damaged in interstate transport. *See, e.g., Hughes Aircraft Co. v. North American Van Lines, Inc.,* 970 F.2d 609, 613 (9th Cir.1992). The Carmack Amendment absolutely forbade carriers to limit their liability to shipper for damage to goods. As a result of this legislation, the carriers increased shipping rates sharply. In 1915 Congress reacted to this rate increase by enacting the so-called Cummins Amendment[10], now codified at 49 U.S.C. § 14706(c)(1)(A), which allows a carrier to limit its liability if it maintains appropriate tariffs.

Broadly, where freight has been damaged while in the possession of the motor carrier, the carrier is liable for the "actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in

---

3. *Id.* at 323, 106 S.Ct. 2548. *See also* Rule 56(e).

4. *Hahn v. Sargent,* 523 F.2d 461, 463 (1st Cir.1975) (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

5. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986).

6. *See British Motor Car Distributors, Ltd. v. San Francisco Automotive Industries Welfare Fund,* 882 F.2d 371 (9th Cir.1989).

7. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n.,* 809 F.2d 626 (9th Cir.1987).

8. *Id.* at 631.

9. *Id.*

10. The Court notes that the parties refer to this portion of 49 U.S.C. § 14706(c) as the "Cummings Amendment," as do several cases. This an error, however, as the Court's research revealed that the correct "popular name" for the amendment is the "Cummins Amendment."

the United States.." 49 U.S.C. § 14706(a)(1). The Cummins Amendment allows carriers to limit their liability "to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and the shipper if that value would be reasonable under the circumstances surrounding the transportation." 49 U.S.C. § 14706(c)(1)(A).

 There are four requirements which must be met in order for a carrier to effectively limit its liability. The carrier must: (1) maintain a tariff in compliance with the requirements of the Interstate Commerce Commission; (2) give the shipper a reasonable opportunity to choose between two or more levels of liability; (3) obtain the shipper's agreement as to his choice of carrier liability limit; and (4) issue a bill of lading prior to moving the shipment that reflects any such agreement. *Hughes Aircraft Co. v. North American Van Lines, Inc.*, 970 F.2d 609, 611–612 (9th Cir.1992), *citing Rohner Gehrig Co., Inc. v. Tri–State Motor Transit,* 950 F.2d 1079, 1081 (5th Cir.1992) (*en banc* ); and *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415 (7th Cir.1987), *cert. denied,* 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988). In order for the bill of lading form to establish limited liability by the carrier, it must contain what has been referred to as an "inadvertence clause." *Rohner Gehrig Co., Inc. v. Tri–State Motor Transit,* 950 F.2d 1079, 1082 (5th Cir.1992). The inadvertence clause specifies the release rate and states that such a rate will apply unless the shipper declares otherwise. *Id.* This gives the shipper the required opportunity to choose between levels of carrier liability, thereby giving the carrier a concomitant opportunity to limit its liability to the shipper for damage or loss.[11] By bargaining with the extent of the limitation to be placed on the

carrier's liability, the shipper can negotiate a reduced rate of transportation. The carrier has the burden of proving that it has complied with these requirements. *Hughes Aircraft Co. v. North American Van Lines, Inc.*, 970 F.2d 609, 612 (9th Cir.1992), *citing Carmana Designs, Ltd. v. North American Van Lines, Inc.*, 943 F.2d 316, 319 (3d Cir.1991); and *Flying Tiger Line v. Pinto Trucking Svc.*, 517 F.Supp. 1108, 1112 (E.D.Pa.1981). However, the shipper is charged with knowledge of what the tariff contains. *American Ry. Express Co. v. Daniel,* 269 U.S. 40, 41–42, 46 S.Ct. 15, 70 L.Ed. 154 (1925).

In this case, there is no dispute that the first and fourth requirements to limit liability were met. The dispute instead focuses on whether the second and third requirements of the *Hughes* test were fulfilled in order to effectuate a limitation of carrier liability.

Before discussing this further, the Court notes that the issue of liability is focused on Defendant Roadway. Defendant U W Freight picked up the grinder from Plaintiff's business in Emmett, Idaho, and delivered it to the Roadway depot in Boise. Defendant Roadway then accepted the grinder for delivery to Kirkland, Washington, via Salt Lake City. There is no dispute that the grinder was not packed into a crate before being placed with U W Freight and there is no real dispute that the grinder arrived unharmed when it was delivered to Roadway. The damage to the grinder occurred while the grinder was in Roadway's possession between Boise and Kirkland. It is believed that, as a result of the grinder not being secured properly in the Roadway truck, the grinder, being top-heavy, was damaged when it toppled over while inside the truck.

Returning now to the issue of whether the second and third requirements of the *Hughes* test for the limitation of liability

---

11. In this case the Defendants' various release value declarations for 1450 lbs, of used machinery from Emmett, Idaho to Kirkland, Washington would have been for $1 per pound, $581.93; not exceeding $2.50 per pound, $614.17; and exceeding $2.50 per pound, $969.88.

were met, the Court will first determine whether Plaintiff, as the shipper, was given a reasonable opportunity to choose between two or more levels of coverage in the bill of lading.

■ "A reasonable opportunity to choose between different levels of coverage means that the shipper had both reasonable notice of the liability limitation and the opportunity to obtain information necessary to making a deliberate and well-informed choice." *Hughes Aircraft Co. v. North American Van Lines, Inc.*, 970 F.2d 609, 612 (9th Cir.1992), *citing Carmana Designs, Ltd. v. North American Van Lines, Inc.*, 943 F.2d at 320 (*quoting Bio-Lab, Inc. v. Pony Express Courier Corp.*, 911 F.2d 1580, 1582 (11th Cir.1990)). The agreement must evidence an "absolute, deliberate and well-informed choice by the shipper." *Id.*

The Defendants' pre-printed bill of lading form contained the following:

Note—Where the rate is dependant on value, shippers are required to state specifically in writing the agreed or declared value of the property. The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding $ per.

and

RECEIVED, *subject to the classifications and lawfully filed tariffs if applicable*, or the individually determined rates in effect on the date of the issue of this Bill of Lading, the property described above in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated above which said carrier (the word carrier being understood throughout this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its route, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed as to each carrier of all or any of, said proper-

ty over all or any portion of said route to destination and as to each party at any time interested in all or any said property, that every service to be performed hereunder shall be subject to all the bill of lading terms and conditions in the governing classification on the date of shipment.

*Shipper hereby certifies that he is familiar with all the bill of lading terms and conditions in the governing classification and the said terms and conditions are hereby agreed to by the shipper* and accepted for himself and his assigns. (Shipper/Name/Authorized Signature)

(Straight Bill of Lading form executed, exhibit A attached to Plaintiff's complaint, *emphasis added.*)

Only a handful of circuit cases confront the issue whether a "fair opportunity" is afforded by a legally adequate tariff, standard bill of lading language, and a blank for the shipper to insert a higher declared value. Four of the decisions—*Hollingsworth & Vose Co. v. A–P–A Transportation Corp.*, 158 F.3d 617, 621 (1st Cir. 1998); *Mechanical Technology Inc. v. Ryder Truck Lines, Inc.*, 776 F.2d 1085, 1088 (2d Cir.1985); *Norton v. Jim Phillips Horse Transportation*, 901 F.2d 821, 824–825 (10th Cir.1989); and *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1423–1424 (7th Cir.1987)—uphold the limitation of liability in bills of lading with inadvertence clauses which were the same as or very similar to the one in the instant case.

By contrast, the Sixth Circuit, in *Toledo Ticket Co. v. Roadway Express, Inc.*, 133 F.3d 439, 443 (6th Cir.1998), implied that something close to a separate, consumer-friendly, specific warning to the shipper from the carrier is necessary. This approach, however, is far from the majority position.

■ In the case now before the Court, the tariff which applies is Roadway's because the tariff that is in effect is the one

for the carrier that moves the shipment from origin to destination. The "origin" in this case is considered to be Boise. Roadway tariff 301–H, section 4, item 3010 provides that the released value of used machinery is $1.00 per pound unless the consigner declares a value at the time of shipment. If a value greater than $2.50 per pound is declared, then the rate of the shipment will either be at 150% of the applicable class or commodity rate or 100% of the minimum charge. (*See* Roadway tariff attached as Exhibit A to the affidavit of Rob Shockley, docket # 73.) As already mentioned, the bill of lading incorporates the tariff by reference and provides an inadvertence clause with a blank space for a declared value to be put in. If no declaration of value is made, then the release rate of $1.00 per pound provided in the tariff applies to losses or injury to the shipment. The location of the inadvertence clause is conspicuous in that it is located above the space for the shipper's authorized signature.

The issue then becomes whether, between the Roadway tariff and the bill of lading, the shipper was given a reasonable opportunity to choose between two or more levels of liability, determined by whether the shipper had both a reasonable notice of the liability limitation and the opportunity to obtain information necessary to making a well-informed choice. *Hughes Aircraft Co. v. North American Van Lines, Inc.,* 970 F.2d 609, 612 (9th Cir.1992) (*internal citations omitted*).

Here, the Plaintiff did not draft the bill of lading or negotiate its terms. The bill of lading contract did incorporate by reference the applicable tariff, which was Roadway tariff 301–H, which established a rate based on a $1.00 per pound release value unless declared to be higher. Mr. Atwood, who testified that he had on many prior occasions utilized the services of shippers, further testified that he has seen language referring to a declared value on bill of lading forms but that he "didn't have a clue" what the term "declared value" re-ferred to, nor did he ask. (*See* R. Atwood deposition attached as Exhibit D to the affidavit of Rob Shockley, docket # 73, transcript pages 53–56.)

If a carrier is to limit its liability, there must be a written agreement between the shipper and the carrier (commonly the bill of lading contract) which must contain a so-called "inadvertence clause." An inad-vertence clause specifies the release rate and states that such a rate will apply unless the shipper declares otherwise. *Rohner Gehrig Co., Inc. v. Tri–State Motor Transit,* 950 F.2d 1079, 1082 (5th Cir. 1992). A typical released rate blank for use by the shipper states the following:

> The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding _____per_____.

*Id.* This exact language was contained in the bill of lading used here. This blank is for the use of the shipper in declaring a higher, alternate valuation for the purpose of increasing the carrier's liability or, in other words, for the purpose of decreasing the limitation of the carrier's liability. *Id.* at 1082–1083. Unlike the facts of the *Rohner* case, the bill of lading that Mrs. At-wood signed did contain a space in which to insert a different declared or released valuation to substantiate a shipper's choice of release rate.

The Court finds that the bill of lading was adequate, when read with the tariff, to establish a release rate of $1.00 per pound, unless the shipper elected higher coverage and was willing to pay an increased freight charge to cover the higher value. It is enough under current applicable case law that the tariff made both coverages available, that the bill of lading afforded the shipper a reasonable opportunity to chose by virtue of the inadvertence clause with the blanks, and that the shipper was a commercial enterprise capable of understanding the agreements it signed. This is enough to give the shipper a "fair opportunity" to opt for more coverage. The ship-per signed the bill of lading which con-

tained an express reference to the tariff, so the shipper is bound by the terms contained in the bill of lading even if Mr. or Mrs. Atwood were not expressly told that the liability would be limited. *See Robinson v. Ralph G. Smith, Inc.,* 735 F.2d 186, 191 (6th Cir.1984).

Plaintiff has presented additional evidence for the Court's consideration on the motion for summary judgment, such as Mrs. Atwood's conversation with the U W Freight driver and Mr. Atwood's testimony as to his understanding as to the function of a bill of lading.[12] The Court finds that these additional facts do not create an issue of material fact for at least three reasons. First, it has long been established law that the shipper is charged with knowledge of what the tariff contains. *American Ry. Express Co. v. Daniel,* 269 U.S. 40, 41–42, 46 S.Ct. 15, 70 L.Ed. 154 (1925); *Mechanical Technology, Inc. v. Ryder Truck Lines, Inc.,* 776 F.2d 1085, 1087–1088 (2d Cir.1985); and *W.C. Smith, Inc. v. Yellow Freight Sys., Inc.,* 596 F.Supp. 515, 517 (E.D.Pa.1983). Although Mr. Atwood testified that he did not read the bill of lading, he is nonetheless responsible for his agent's conduct in having entered into the written agreement.

■ Second, the level of "sophistication" of the shipper is not a factor which is to be considered in determining the outcome under this framework analysis. *Rohner Gehrig Co., Inc. v. Tri–State Motor Transit,* 950 F.2d 1079 (5th Cir.1992). In other words, the fact that Mr. Atwood testified that "didn't have a clue" as to the meaning of the phrase "declared value" as printed on the bill of lading is not relevant.

■ Finally, what the Plaintiff seeks to do is create an issue of fact by using parol evidence, i.e. what the driver may have told Mrs. Atwood, to alter the express terms of the contract. As other courts have noted, "[O]ne who signs a contract in the absence of fraud or deceit cannot avoid it on the grounds that he did not read it or that he took someone else's word as to what it contained." *Chandler v. Aero Mayflower Transit Co.,* 374 F.2d 129, 136 (4th Cir.1967). This rule was recently applied in *Jackson v. Brook Ledge, Inc.,* 991 F.Supp. 640 (E.D.Ky.1997), where the shipper stated that although he had signed bills of lading in the past, he had never read one and that he was simply following the driver's instructions to sign the document. Under those circumstances the Kentucky District Court refused to release the shipper from the limitations on liability for property damage (in that case a very expensive race horse) that was established by the express wording and lack of any higher declaration of value other than contained in the bill of lading. These recent cases really hark back to a very early decision by the United States Supreme Court where it was held:

> The valuation declared or agreed upon as evidenced by the contract of shipment upon which the published tariff rate is applied must be conclusive in an action to recover for loss or damage [of] a greater sum.... *To permit such a declared valuation to be overthrown by evidence aliunde* [to] *the contract, for the purpose of enabling the shipper to obtain a recovery in a suit for loss or damage in excess of the maximum valuation thus fixed, would both encourage and reward undervaluations, and bring about preference and discriminations forbidden by the law. The valuation the*

---

12. Although Mr. Atwood did not fill out the bill of lading and testified that he did not read it, Mrs. Atwood testified that she filled it out and read it, and that she asked the driver of the truck what the clause meant, Mrs. Atwood further testified that the driver told her "not to worry about it" because the important thing was the weight of the item being shipped as that was what the shipping rate would be based on. On the other hand, the driver, Dale Profit, testified that he had no conversation with Mrs. Atwood about the bill of lading and that she did not ask about the tariff or declaring a value, because if she had, then he would have told her to call the U W Freight office in Caldwell. (Affidavit of Dale Profit, docket # 71, page 4, ¶ 14.)

*shipper declares determines the legal rate where there are two rates based upon valuation.*

*Kansas City Southern Railway Co. v. Carl,* 227 U.S. 639, 652, 33 S.Ct. 391, 57 L.Ed. 683 (1913) (emphasis added).

Plaintiff is seeking a the total amount of $80,192.85 in damages, which is the cost to replace the grinder. The grinder was estimated to be valued at somewhere in the range of $20,000 to $28,000 for the 1983 model. Plaintiff claims that it would cost him $80,000 or more to replace the grinder now because a 1983 model is no longer available. Plaintiff also seeks the additional labor costs he incurred when he had to forgo the use of the grinder.

The Carmack Amendment, 49 U.S.C. § 14706(a)(1) initially provided that a carrier is liable for the actual loss or injury to property caused by a carrier while the property was transported under a bill of lading. The Cummins Amendment, 49 U.S.C. § 14706(c)(1)(A), established a limitation on the carrier's liability, limiting it to "a value established by written or electronic declaration of the shipper or by a written agreement between the carrier and shipper . . . ."

In this case, the Court has determined that the bill of lading used by the carrier did comply with the Roadway's tariff and that the requirements of the *Hughes* test were met. The Court correspondingly found that Roadway had effectively limited its liability to the release rate contained in Roadway's tariff, which establishes a release rate of $1.00 per pound in the absence of the shipper having declared another value and higher release rate. Therefore, the Court finds that the shipper is not entitled to damages over and above the amount that the carrier has already tendered in the amount of $2,031.93, which covered a refund of the shipping fees and damage caused to the grinder paid at the rate of $1 per pound, or $1,450.

Based on the foregoing, the Court finds that Plaintiff's damages are limited to the amount he already received in response to the claim filed with the carrier and will recommend that the Plaintiff's motion for summary judgment be denied.

## IV.

### Defendant Roadway's motion for summary judgment.

Defendant Roadway's motion for summary judgment raises essentially the same argument raised by Defendant UW Freight as to the limitation on liability due to Roadway's having filed a tariff and because Plaintiff did not declare a value in the bill of lading. In addition, Roadway argues that because Plaintiff did not notify the carrier of the special circumstances that would arise if a breach occurred, Plaintiff is not entitled to recover special or consequential damages.

Based on the Court's findings on the Plaintiff's motion for summary judgment, and recognizing that this motion addresses the same issues, the Court will recommend that Defendant Roadway's motion for summary judgment be granted.

## V.

### Defendant Roadway's motion to dismiss.

The motion to dismiss brought by Defendant Roadway has been joined by Defendant UW Freight. Defendants assert that the complaint should be dismissed in its entirety under Fed.R.Civ.P. 19 for failure of the Plaintiff to join an indispensable party in the suit. The argument is based on the undisputed facts that Plaintiff Atwood was leasing the grinder from a company called Orvestco, Inc. at the time the property was damaged, that Orvestco was purchased by International Knife, Inc., that International Knife purchased the lease for the grinder, and that as the true owner of the grinder, International Knife is an indispensable party to the suit.

In response to the motion, Plaintiff submitted an affidavit by the director of fi-

nance of International Knife and Saw, the successor in interest to the lessor, Orvestco, which states that it does not intend to pursue a direct claim for damages to the grinder. Accordingly, the Court will recommend that the motion to dismiss be denied.

## VI.

### Defendant U W Freight's motion for summary judgment.

Defendant U W Freight filed a cross-claim against Defendant Roadway for indemnification of any damages that Plaintiff would recover against U W Freight because there is no dispute that the facts show that the damage to the grinder occurred while it was in Roadway's possession.

Based on the Court's recommendations relative to the Plaintiff's summary judgment motion and Defendant's summary judgment motion, Plaintiff will not be recovering additional damages from either of the Defendants. Therefore, Defendant U W Freight's cross claim becomes meritless. Accordingly, the Court will recommend that U W Freight's motion for summary judgment against Defendant Roadway be declared to be moot and that the cross-claim be dismissed.

## VII.

### Defendant UW Freight's motion to strike.

Defendant UW Freight moves to strike the submission of Martin Foley (docket # 62) that was submitted by Plaintiff in conjunction with Plaintiff's motion for summary judgment on the grounds that: 1) the affidavit was not submitted in a timely fashion because it was filed after the motion was filed; and 2) the first three pages of the document which precede the two-paragraph affidavit by Martin Foley appear "to be various positions of the NMFTA by Plaintiff's counsel."

The issues raised by Defendant U W Freight go to the weight that would be accorded the information contained in the affidavit. Because the Court is able to exercise its discretion in this regard, the Court does not find it necessary to strike the affidavit and the motion will be denied.

### *ORDER*

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Defendant U W Freight's motion to strike (docket # 66), filed March 31, 1999, is DENIED.

2) The hearing currently set for Monday, November 29, 1999, is VACATED.

### *RECOMMENDATION*

Based upon the foregoing, the Court being otherwise fully advised in the premises, the Court **hereby RECOMMENDS** that:

1) Plaintiff's motion for summary judgment (docket # 57), filed March 18, 1999, be DENIED.

2) Defendant Roadway's motion for summary judgment (docket # 76), filed April 8, 1999, and joined by Defendant U W Freight (docket # 88), be GRANTED.

3) Defendant Roadway's motion to dismiss (docket # 91), filed July 6, 1999, be DENIED.

4) Defendant U W Freight Line's motion for summary judgment against Defendant Roadway (docket # 114), filed September 24, 1999, be deemed to be MOOT, and the cross-claim be accordingly dismissed.

Written objections to this Report and Recommendation must be filed within ten (10) days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objec-

tions to the United States Court of Appeals for the Ninth Circuit.