**BIO–LAB, INC., Plaintiff–Appellee,**

v.

**PONY EXPRESS COURIER CORPORATION, Defendant–Appellant.**

**No. 89–7744.**

United States Court of Appeals, Eleventh Circuit.

Sept. 20, 1990.

Roy W. Scholl, III, Scholl & Scholl, Birmingham, Ala., for defendant-appellant.

Daniel J. Burnick, Sirote & Permutt, PC, Birmingham, Ala., for plaintiff-appellee.

Before HATCHETT, Circuit Judge, RONEY* and FAIRCHILD**, Senior Circuit Judges.

---

\* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable Thomas E. Fairchild, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

FAIRCHILD, Senior Circuit Judge.

Bio–Lab, Inc. contracted with Pony Express Courier Corporation to deliver a shipment of human blood from Birmingham, Alabama, to Norcross, Georgia. The shipment was apparently lost, for it was never delivered. Bio–Lab filed this diversity suit to recover the shipment's declared value, $10,789.77. Pony Express conceded liability for losing the shipment, but claimed that its contract with Bio–Lab limited its liability to $250. After conducting discovery, both parties moved for summary judgment. The district court ruled that Pony Express had failed effectively to limit its liability, and granted judgment in favor of Bio–Lab for the stipulated value of the shipment. Pony Express appeals.

## I.

The Interstate Commerce Act imposes liability on carriers like Pony Express for "the actual loss or injury to the property" received for transportation, unless the carrier limits its liability under 49 U.S.C. § 10730. 49 U.S.C. § 11707(a)(1) & (c)(4). Section 10730 allows motor carriers to

> establish rates for the transportation of property (other than household goods) under which the liability of the carrier ... is limited to a value established by written declaration of the shipper or by written agreement between the carrier ... and shipper if that value would be reasonable under the circumstances surrounding the transportation.

These sections are recodifications of the Carmack Amendment and are commonly referred to by that name. *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1412 n. 6 (7th Cir.1987), *cert. denied*, 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988).

The critical issue, as we see it, is whether the waybill issued at the time of shipment fulfills the statutory requirement of a written agreement establishing a value of $250, notwithstanding Bio–Lab's declaration on the face of the waybill of a value of $10,-789.77.

## II.

When Pony Express picked up the shipment in question from Bio–Lab on November 2, 1988, a waybill was filled out.[1] The waybill states in bold print on its front side:

> UNLESS A GREATER VALUE IS DECLARED HEREIN THE SHIPPER AGREES AND DECLARES THAT THE VALUE OF THE PROPERTY IS RELEASED TO AN AMOUNT NOT EXCEEDING $50 FOR ANY SHIPMENT.

There is a box printed on the front of the waybill near this statement so the shipper can declare the value of its shipment. Bio–Lab declared the shipment to be worth $10,789.77 by writing this value in the box. The front of the waybill also states in bold print "Non negotiable waybill subject to conditions set forth on reverse side hereof." In undifferentiated print on the back of the waybill appears paragraph number 10:

> Transportation rates have been established based on an agreement by shipper that the release value of the property transported does not exceed $50.00 per shipment, or such amount as provided in an applicable tariff or special written agreement. Shipper recognizes that it may declare a higher value pursuant to a separate written agreement with carrier and that such declared higher value will result in higher transportation rates. Absent a tariff provision or an executed contract to the contrary, carrier's maximum liability for such increased value shipments, specifically including food stamps, shall be $250.00.

The waybill referred to the tariff which Pony Express had on file with the Interstate Commerce Commission.

Item 416 of the tariff, entitled "Carrier's Liability" provided in Paragraph B that a base transportation rate would apply to a

---

1. Somewhat incredibly, the record designated on appeal by Pony Express does not include any photocopies of the actual waybill involved. We rely on the district court's description of the waybill, which the parties do not dispute.

shipment with a value "declared in writing by the shipper or agreed upon in writing as the released value" not exceeding $50. The base transportation rate plus an *ad valorem* charge would apply to shipments with a released value exceeding $50, but not exceeding $250. Paragraph C required the bold face legend and space for declared value on the face of the bill of lading, already referred to.

Paragraph D provided:

If the shipper designates a value exceeding $250.00 per shipment, the shipment will not be accepted for transportation, but if such shipment is inadvertently accepted, charges will initially be assessed on the basis of the rate for the highest value provided.... In no case will the carrier's liability exceed the highest value for which rates are provided.

Paragraph E provided:

If shipper declares liability in excess of $250.00, shipper must notify carrier in writing seventy-two (72) hours in advance of tendering of shipment. Such notification must indicate nature of commodity to be shipped, origin, and destination of shipments and value to be declared. If shipper fails to comply with provisions of this paragraph, shipment will be considered to have a released value of no more than $50.00 per shipment.

Evidently Pony Express construes paragraph D of the tariff consistently with paragraph 10 of the waybill, limiting liability in this case to $250. The construction is reasonable, because $250 is "the highest value for which rates are provided." Paragraph E, however, would limit liability in this case to $50. The district court noted this discrepancy and that Paragraph E of the tariff requires 72 hours advance notice of a "declared liability" in excess of $250, while Paragraph 10 of the waybill says nothing about notice, but requires "a separate written agreement" or "executed contract." The court held that the waybill was not in substantial compliance with the tariff and therefore void. *See Robinson v. Ralph G. Smith, Inc.*, 735 F.2d 186, 190

(6th Cir.1984). We need not reach this issue.

### III.

The Carmack Amendment allows carriers such as Pony Express to limit their liability "to a value established by written declaration of the shipper or by written agreement." Section 10730(b)(1). Our case differs from any decided case of which we are aware. The shipper has declared the full value on the waybill. The same waybill contains the provision on which Pony Express must rely to override the value established by the shipper's declaration. That provision, Paragraph 10, is inconspicuous, appears on the back of the waybill, and there is no evidence that it was ever called to the attention of anyone at Bio–Lab, the shipper. It is a part of a contract Bio–Lab signed, but there is nothing to show that Bio–Lab's people were actually aware of it.

Although the cases dealing with the Carmack Amendment do not involve situations where an obscure printed provision in a bill of lading is relied on to render nugatory a shipper's own declaration of value, they do emphasize the substantial burden which the carrier must bear in limiting liability to less than full value.

There are four steps a carrier must take to limit its liability under the Carmack Amendment: (1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtain the shipper's agreement as to his choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment.

*Hughes*, 829 F.2d at 1415.

A fair opportunity means that the shipper had both reasonable notice of the liability limitation and the opportunity to obtain information necessary to making a deliberate and well-informed choice.

*Id.* at 1419.

Although shippers are charged with notice of terms in a tariff, the maintenance of tariff schedules is not enough.

A carrier's arbitrary limitation of its liability for full actual damages is not effective unless the shipper enters into an agreement limiting that liability "as the result of an equally certain specified action ... in respect to a voluntary valuation of his goods." *Caten v. Salt City Movers & Storage Co.,* 149 F.2d 428, 432 (2d Cir.1945).

In other words a carrier cannot limit liability by implication. There must be an absolute, deliberate and well-informed choice by the shipper.

*Anton v. Greyhound Van Lines, Inc.,* 591 F.2d 103, 108 (1st Cir.1978).

[O]nly by granting its customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge can a carrier lawfully limit recovery to an amount less than the actual loss sustained.

*New York, N.H. & H.R. Co. v. Nothnagle,* 346 U.S. 128, 135, 73 S.Ct. 986, 990, 97 L.Ed. 1500 (1953).

The provision of the waybill on which Pony Express relies fixes a "value" unless the parties agree otherwise. The structure of the statute itself, requiring a value *established* by declaration of the shipper or by agreement of the shipper and carrier, suggests caution in permitting an agreement in the terms of Paragraph 10 to override a value chosen and declared by the shipper.

■ We conclude that where the shipper has declared the value of his goods in a bill of lading a provision to the contrary in the printed portion of the document cannot operate as an agreement of the parties establishing a different value unless it is reasonably clear that the shipper was specifically aware of that provision.

A provision in a tariff likewise is not sufficient unless it is shown that the shipper was specifically aware of it. *Anton, supra.*

Completing the waybill created five copies. Bio–Lab kept the shipper's copy. On its accounting copy, Pony Express later crossed out the $10,789.77 value declared by Bio–Lab, and substituted $250. Pony Express sent this altered copy to Bio–Lab along with an invoice for its charges, without drawing specific attention to the alteration, and without reference to Paragraph 10 of the waybill or the corresponding item of the tariff. This unilateral, after-the-fact, alteration could have no legal effect on the transaction. Pony Express, however, relies on previous similar alterations as notice to Bio–Lab that its declarations of value in excess of $250 were ineffective.

The shipment before the court occurred November 2, 1988. Bio–Lab had been making similar shipments over Pony Express for about seven years. There were five such shipments in the four months preceding November, and in these instances Pony Express had deleted Bio–Lab's declared values substantially in excess of $250, substituted $250 and sent an accounting copy of the altered waybill to Bio–Lab, along with an invoice.

Although Pony Express did not call attention to the alterations, much less explain that they were based on Paragraph 10 of the waybill, or Item 416 of the tariff, Pony Express argues that this was evidence sufficient to raise a jury question as to adequate notice to Bio–Lab that its declaration of full value would accomplish nothing beyond a valuation of $250.

The district court, in discussing the question whether Pony Express gave reasonable notice of the liability limitation and the opportunity to obtain information necessary to making a deliberate and well-informed choice, concluded that the forwarding of the altered copies of the waybills "may constitute notice to plaintiff, and creates a jury question." We do not agree.

■ The record shows that in eleven shipments from September 17, 1987 to June 16, 1988 Bio–Lab declared values similar to the values declared in the shipment at bar. In none of these cases was the declared value altered by Pony Express. There is no evidence of the reason Pony Express changed its practice, nor that it alerted Bio–Lab to any reason. Testimony that Bio–Lab employees responsible for receiving the waybills and invoices did not notice the alterations in the five preceding ship-

ments was uncontradicted. In the absence of any explanation to Bio–Lab for the alterations on these copies, we conclude that the forwarding of the altered copies did not raise a jury issue as to sufficient notice to Bio–Lab of Paragraph 10 of the waybill or Item 416 of the tariff.

■ The parties have not informed us concerning the level of rates charged for the similar Bio–Lab shipments. It may well be that Pony Express regularly charged its rate for shipments valued at $250. Under our view, it bore the risk of loss at the declared values, and assuming it charged only the rate for $250 value, it was not compensated for its greater risk, and it has suffered the full loss in the instance before the court. We think that the Carmack Amendment requires that result under these facts. Pony Express had knowledge of its tariff and could have insisted that no value in excess of $250 could be declared unless a 72 hour notice had been given and an appropriate rate for a higher value negotiated.

The judgment is AFFIRMED.

AFFIRMED.