**TOLEDO TICKET COMPANY,**
Plaintiff–Appellant,

v.

**ROADWAY EXPRESS, INC.,**
Defendant–Appellee.

No. 96–3412.

United States Court of Appeals,
Sixth Circuit.

Argued June 10, 1997.

Decided Jan. 8, 1998.

Tim A. Ault (argued and briefed), Malone & Ault, Toledo, OH, for Plaintiff–Appellant.

Dirk H. Beckwith (argued and briefed), Cross Wrock, P.C., Detroit, MI, K. Girard Blakley, Muller & Blakley, Maumee, OH, for Defendant–Appellee.

Before: BROWN, NORRIS, and DAUGHTREY, Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

Plaintiff, Toledo Ticket Company ("Toledo Ticket"), appeals from the district court's order granting summary judgment to defendant, Roadway Express, Inc. ("Roadway"), a common carrier in the business of moving freight. The district court ruled that Roadway had, in accordance with the Interstate

1

1

Commerce Act, limited its liability for damage to goods it contracted to carry for Toledo Ticket. Because the district court improperly granted summary judgment, we reverse and remand this cause for further proceedings.

## FACTS

Toledo Ticket and Roadway entered into a written contract calling for Roadway to deliver specific items, on behalf of Toledo Ticket, to the Golden Gate Bridge Highway and Transportation Department ("Golden Gate") in San Francisco, California, for a fee of $965.79. Roadway agreed to deliver 188 cartons, each carton containing 800 books of toll tickets for travel on the Golden Gate Bridge. Roadway picked up all 188 cartons but delivered only 186 of them, as two cartons were stolen during shipment. As a result, Toledo Ticket sued Roadway for $13,020 in damages, an amount equalling the amount of loss Golden Gate had asserted against Toledo Ticket. Roadway, however, maintained that it was entitled to rely upon a limitation of liability found in the tariff it had filed with the Interstate Commerce Commission ("ICC"). The district court granted summary judgment to Roadway, holding that Roadway had limited its damages to $34.[1] We review de novo the order granting summary judgment. *Brooks v. American Broadcasting Cos.*, 932 F.2d 495, 500 (6th Cir.1991).

## ANALYSIS

Toledo Ticket's claim for damages is governed by the Interstate Commerce Act ("ICA"), an act preempting state and common law actions relating to the shipment of goods by interstate carriers. *See W.D. Lawson & Co. v. Penn Cent. Co.*, 456 F.2d 419, 421 (6th Cir.1972). The ICA requires a common carrier to issue a receipt or bill of lading for property it receives for transport. 49 U.S.C. § 11707(a)(1).[2] The carrier is then liable to the party entitled to recover under the receipt or bill of lading for any "actual loss or injury to the property," unless the carrier limited its liability pursuant to 49 U.S.C. § 10730.[3] § 11707(c)(4).

If, pursuant to § 10730, a carrier receives authorization for a tariff that includes a shipping rate limiting its liability for lost or damaged goods to the value established by the shipper (called the "released value" of the goods), and the shipper is willing to limit the carrier's liability to a value lower than the actual worth of the goods, the carrier will be in a position to shift some of the risk of loss of the goods back to the shipper. In exchange for agreeing to this lower released valuation, the shipper can expect to enjoy a lower shipping cost. The shipper is not required to accept the lower shipping rate and share the risk of loss; instead, it can select a

1. The district court found that the two stolen cartons weighed a total of 46 pounds and that Roadway had limited its liability to fifty cents per pound. Thus, the court held that Roadway's liability was limited to $23 plus $11 freight charge reimbursement for a total of $34.

2. Citations to the ICA refer to the sections as numbered at the time this cause of action arose: February 1995. Subsequent amendments, though not substantively affecting the provisions at issue here, led to a reorganization and renumbering of many sections. *See* ICC Termination Act of 1995, Pub.L. No. 104–88, 109 Stat. 803 (effective January 1, 1996). The ICA provisions discussed herein now appear at 49 U.S.C. § 14706.

3. Section 10730 provides, in relevant part:

(a) The Interstate Commerce Commission may ... authorize a carrier ... to establish rates for transportation of property under which the liability of the carrier for that prop-

erty is limited to a value established by written declaration of the shipper, or by a written agreement....

(b)(1) Subject to the provisions of paragraph (2) of this subsection, a motor common carrier ... may, subject to the provisions of this chapter ... establish rates for the transportation of property ... under which the liability of the carrier ... for such property is limited to a value established by written declaration of the shipper or by written agreement between the carrier ... and shipper if that value would be reasonable under the circumstances surrounding the transportation.

(2) Before a carrier or freight forwarder may establish a rate for any service under paragraph (1) of this subsection, the Commission may require such carrier or freight forwarder to have in effect and keep in effect, during any period such rate is in effect under such paragraph, a rate for such service which does not limit the liability of the carrier or freight forwarder.

49 U.S.C. § 10730.

41

higher rate, thus placing the risk of loss on the carrier. Section 10730 is a very narrow exception to the general rule, expressed in § 11707(c)(4), requiring that the carrier be liable for the actual value of the shipper's property. *Rohner Gehrig Co. v. Tri–State Motor Transit,* 950 F.2d 1079, 1082 (5th Cir. 1992); *Carmana Designs Ltd. v. North Am. Van Lines, Inc.,* 943 F.2d 316, 319 (3d Cir. 1991).

▇ For a carrier to limit its liability pursuant to § 10730, it must satisfy four requirements. The carrier must: (1) maintain approved tariff rates with the ICC; (2) give the shipper a fair opportunity to choose between two or more levels of liability; (3) obtain the shipper's written agreement as to his choice of liability; and (4) issue a receipt or bill of lading prior to moving the shipment. *Rohner Gehrig,* 950 F.2d at 1081; *Hughes v. United Van Lines, Inc.,* 829 F.2d 1407, 1415 (7th Cir.1987); *Anton v. Greyhound Van Lines, Inc.,* 591 F.2d 103, 107 (1st Cir.1978).

### 1. ICC-approved tariff

To satisfy the first requirement, a carrier must file a rate schedule, called a "tariff," for approval with the ICC. The district court found, and Toledo Ticket does not dispute, that Roadway maintained an approved tariff. The tariff included a shipping rate that was based upon a fifty cent per pound released value for "printed matter having exchange value."

### 2. Fair opportunity to choose carrier's liability

▇ With regard to the second requirement, the Supreme Court has noted that "only by granting its customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge can a carrier lawfully limit recovery to an amount less than the actual loss sustained." *New York, N.H. & H.R. Co. v. Nothnagle,* 346 U.S. 128, 135, 73 S.Ct. 990, 990, 97 L.Ed. 1500 (1953) (citations omitted).

Affording a shipper a fair opportunity to choose between levels of liability means that a carrier must provide the shipper with both reasonable notice of any options that would limit the liability of the carrier and the opportunity to obtain the information about those options that will enable the shipper to make a deliberate and well-informed choice. *See Carmana,* 943 F.2d at 320; *Bio–Lab, Inc. v. Pony Express Courier Corp.,* 911 F.2d 1580, 1582 (11th Cir.1990); *Hughes,* 829 F.2d at 1419. In other words, a carrier seeking to limit its liability must bring this fact to the attention of the shipper, and the shipper must be given the choice to contract either with the limitation or without it. And, since it is the carrier that is seeking to limit its statutory liability, any ambiguity in the language the carrier selects in an effort to satisfy this second requirement must be construed against it. Furthermore, the burden of establishing that this requirement (as well as the other three) has been satisfied rests with the carrier.

Roadway contends that it satisfied the fair opportunity requirement when it gave Toledo Ticket a bill of lading that included a box in which the following language appeared:

WHEN THE RATE IS DEPENDENT ON VALUE, SHIPPERS ARE REQUIRED TO STATE SPECIFICALLY IN WRITING THE AGREED OR DECLARED VALUE OF THE PROPERTY. THE AGREED OR DECLARED VALUE OF THE PROPERTY IS HEREBY SPECIFICALLY STATED BY THE SHIPPER TO BE NOT EXCEEDING:

$_____$ PER _____.

Toledo Ticket's employee left this box blank. Elsewhere, the bill of lading provided that "FREIGHT MOVING UNDER THIS BILL OF LADING IS SUBJECT TO TARIFFS ON FILE WITH THE INTERSTATE COMMERCE COMMISSION." Roadway's tariff provides that it may insure the shipper's goods at the lowest released value permitted in the tariff if the shipper fails to declare a value in the bill of lading.[4] Hence,

---

4. Specifically, the tariff provides: "When tariff provisions provide for alternative actual value or released value declarations by the consignor at

time of shipment and carrier receives the shipment without such declaration, the shipment will

Roadway contends that its liability is limited to the lowest released value, fifty cents per pound.

 Toledo Ticket argues that Roadway failed to limit its liability because it did not give Toledo Ticket reasonable notice of the liability limitation and a fair opportunity to choose among options. Toledo Ticket offered an affidavit from the employee who filled out the bill of lading on its behalf, Jean Kroncke. According to Kroncke, she completed the bill of lading in accordance with the procedures and instructions provided by Roadway and was never aware she had a choice regarding the level of Roadway's liability. The district court rejected Toledo Ticket's argument, holding that, given its status as a sophisticated, frequent shipper, Toledo Ticket could not "credibly claim" to be unaware of this common form of liability limitation.[5] However, in order to provide the shipper with the reasonable notice that will permit the carrier to limit its liability, we believe the carrier must bring to the attention of the shipper its option to choose between levels of liability, whether or not the shipper is "sophisticated." Furthermore, a carrier cannot satisfy its heavy burden of complying with the statutory scheme by simply alluding to language on file with the ICC as part of its tariff. *Bio-Lab*, 911 F.2d at 1582. Accordingly, a carrier will comply with the fair opportunity to choose requirement if its notice to the shipper sets out the levels of coverage from which the shipper can choose and includes a clear statement that by opting for a lower shipping rate the carrier's liability for loss will be limited.

We cannot accept Roadway's argument that the effect of the quoted language from its bill of lading is that if a shipper fails to declare a released value for its goods, then Roadway enjoys the option of choosing to insure the goods at the lowest released value. In the first place, the language simply does not say as much. Furthermore, even if the obtuse language of the bill of lading could be construed as affording someone an option,

surely Roadway has the option reversed. Under the statutory scheme, the carrier is liable for the full value of lost goods unless the shipper agrees to a lower value. The option to limit recovery for loss belongs to the shipper, not the carrier.

Clearly, Toledo Ticket was not provided with a choice among levels of liability; nor was it told that Roadway's liability was limited. Accordingly, we conclude that Toledo Ticket was not given a fair opportunity to choose between two or more levels of liability.

### 3. Shipper's written agreement

 In order to satisfy the third requirement, a carrier must obtain the shipper's written declaration or agreement to abide by a lower valuation of its property. That declaration or agreement must evince an absolute, deliberate and well-informed choice by the shipper to abide by a limited valuation of its property. *Carmana*, 943 F.2d at 319. The shipper must "agree in the same sense that one agrees or assents to enter into a contractual obligation." *Chandler v. Aero Mayflower Transit Co.*, 374 F.2d 129, 135 (4th Cir.1967) (citation omitted). Clearly, there was no such written declaration or agreement by Toledo Ticket to limit Roadway's liability. Nor is Roadway's position buttressed by its reliance upon the purported default language. As pointed out above, the default language was contrary to the statutory scheme. Toledo Ticket's failure to fill in the blanks cannot be held to be an affirmative act of agreement to abide by lower valuation.

### 4. Issuance of a receipt or bill of lading

 To satisfy the fourth requirement, a carrier must provide the shipper with a receipt or bill of lading before transporting shipper's goods. Toledo Ticket acknowledges that Roadway provided it a bill of lading before it transported the cartons of toll tickets. However, Toledo Ticket never-

---

be rated at the lowest released value or highest actual value...."

**5.** Because the issue of whether Roadway gave Toledo Ticket a fair opportunity to choose was

before the district court on summary judgment, the court was, of course, in no position to evaluate Kronke's credibility.

theless contends that Roadway failed to satisfy the fourth requirement because the bill of lading contains an incorrect description of the goods to be shipped, referring to them as "paper parking tags" rather than "paper parking tickets." The district court properly found that this did not affect the validity of Roadway's liability limitation because (1) it was Toledo Ticket that entered the incorrect description on the bill of lading, (2) whether the goods were labeled "tags" or "tickets," the released value is the same under Roadway's tariff as both are "printed matter having exchange value," and (3) in this circuit, the bill of lading need not strictly comply with the applicable tariff in order to effectively limit liability; substantial compliance is sufficient. *Robinson v. Ralph G. Smith, Inc.*, 735 F.2d 186, 190 (6th Cir.1984).

## CONCLUSION

For the reasons stated above, we **reverse** the order of summary judgment in favor of Roadway and **remand** this cause to the district court for further proceedings.