**DEAN FOODS CO., Plaintiff,**

v.

**CONSOLIDATED FREIGHTWAYS MTR., Defendant.**

No. 97 C 4428.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 15, 1998.

Joel H. Steiner, Paul Anthony Gajewski, Axelrod, Goodman, Steiner & Bazelon, Chicago, IL, for Dean Foods Company, plaintiff.

Bruce Craig Spitzer, Christopher A. Kreid, Metge, Spitzer & Kreid, Chicago, IL, for Consolidated Freightways Motor Freight, defendant.

### *MEMORANDUM OPINION AND ORDER*

ZAGEL, District Judge.

Dean Foods uses a laser coder machine to mark expiration dates on its dairy and food products. It is in constant operation. Two machines are used alternatively. One is usually available as a backup. No laser coder and the production line stops. One machine was to be sent to its maker for routine maintenance. It was given to Consolidated Freightways for delivery to Arizona. It was packaged in a reusable crate—marked fragile—which was provided by the maker. It was in operating condition when delivered to the carrier who issued a straight bill of lading without notation as to the condition of the freight. Upon delivery to Arizona, the crate had two holes in it. These were forklift type punctures which penetrated 3/4 of the way through the crate, damaging electronics and bending the frame, all of which left the machine useless. Consolidated Freightways

wisely concedes liability but challenges damages.

■ The first dispute is over the value of the machine. Dean got a replacement machine for $24,000 and was given a credit of $4,000 for the salvage value of its ruined machine. It wants that amount plus the $480 for shipping costs. The market value of the goods or the contract price of replacement is a valid measure of ordinary damages. There is no legal difference here between the two measures because Dean demands the lower of the two figures. The president of the company, Jim Morin, which made the machine, says the damaged machine would have been worth (if undamaged) about $25,000 to $35,000 based on its age and usage. The carrier objects to the evidence which is contained in an affidavit which states the witness' background and experience with the company including maintaining, repairing and selling new machines and familiarity with the market for new and used machines. I think there is a sufficient basis for the witness' opinion as to value. It is true that he did not support it with records from other sales, but he is not an expert whose opinions are based on a formal study of the market. They are based on his direct participation in the market. I agree with Dean that the witness was analogous to a treating physician rather than an examining expert. Of course, cross-examination might well dent the opinion, but the carrier did not depose the witness either before or after Dean filed for summary judgment, and I find it had reasonable notice of his opinion as to its value. I deny the carrier's motion to strike the affidavits of Morin and Moore.

■ The carrier maintains that there still remains a disputed question of fact created by the affidavit of an administrative assistant of the carrier. The heart of that document is an assertion that a review of the Internet found two sites which offered the machine Dean had shipped·for prices ranging from $2000 to $4000. So we have a dispute between man and Ethernet—Morin vs. Internet. In this case, the man wins because the Internet data is not admissible. This is so because the administrative assistant who reported the data did nothing more than report what appeared on her screen. Had she some personal knowledge of the machines and the market, the answer might be different. If she had Morin's experience in the business, she might be able to opine that the machines listed at the sites she found were likely to be comparable to the one the Dean had and replaced (because, say, no one would buy a LaserMark 930 at any price unless it performed to the standards required by Dean). She might testify that the machines were just as good but cheaper because the seller could not maintain them. There are other ways that such an opinion could be reached but none of them work with a witness whose expertise is to assist in litigation. So the damages are $20,480.

■ The last defense is that the transport of the goods was made under a released value tariff. This is a doctrine which allows a shipper to offer two rates. The lower rate limits the carrier's liability to the value established by the shipper. The higher rate does not so limit the carrier's liability. In this case, Dean never filled in the line for declared value, so its value is established by the lowest released value rate, which here amounts to nearly nothing. It is clear from the evidence that Dean did not deliberately decline to fill in the blank space for the value of the goods. It did so inadvertently, neglectfully if you will. There are problems with applying the doctrine in this case. No one says that Dean was explicitly given a choice between lower rate and higher rate. Years ago this did not matter because shippers were presumed to be familiar with all filed tariffs which established shipping rates. Now, of course, there are no binding filed tariffs and, I think, no presumption that shippers know what they are. Essentially, I agree with the 6th Circuit which refused to apply the released rate doctrine where the shipper acts inadvertently in the absence of a notice "which sets out the levels of coverage from which the shipper can choose and includes a clear statement that by opting for a lower shipping rate the carrier's liability for loss will be limited." *Toledo Ticket Co. v. Roadway Express, Inc.,* 133 F.3d 439, 443 (6th Cir.1998). There was no such notice here.

The plaintiff's motion for summary judgment is granted in the amount of $20,480 and costs.