## ALLISON–ERWIN COMPANY, Plaintiff,

v.

## SATURN FREIGHT SYSTEMS, INC., Truck Air of the Carolinas, Inc., Defendants.

### No. 1:99–CV–51–CAM.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 29, 2000.

Evan H. Pontz, Troutman Sanders, Atlanta, GA, Brian K. Fielden, phv, Johnston Allison & Hord, Charlotte, NC, for Allison–Erwin Company, plaintiff.

Paul W. Burke, Drew Eckl & Farnham, Atlanta, GA, for Saturn Freight Systems, Inc., defendant.

R. Clay Porter, Scott W. McMickle, Dennis Corry & Porter, Atlanta, GA, for Truck Air of the Carolinas, Inc., defendant.

### *ORDER*

MOYE, District Judge.

Plaintiff, Allison–Erwin Company, filed this case seeking to recover jointly and severally from Defendants, Saturn Freight Systems, Inc. (Saturn), and Truck Air of the Carolinas, Inc. (Truck Air), pursuant to 49 U.S.C. § 14706, for the loss of goods being transported in interstate commerce. Saturn filed a cross claim for indemnity against Truck Air. The case is before the Court on Truck Air's motion for summary judgment as to Saturn's cross claim, Saturn's motion for partial summary judgment as to Plaintiff's claim, Truck Air's motion for summary judgment or, in the alternative, partial summary judgment as to Plaintiff's claim, and Truck Air's request for oral argument. For the reasons stated herein, this Court grants Defendants' motions for summary judgment against Plaintiff and denies all other motions and requests as moot.

### FACTUAL AND PROCEDURAL HISTORY

On January 9, 1997, Plaintiff's employee, Randy McDaniel, was contacted by Plaintiff's Charlotte, North Carolina, location and asked to stay after hours at Plaintiff's Norcross, Georgia, location until a Saturn driver arrived to pick up a shipment that needed to be delivered to Miami, Florida, the next day. McDaniel was the Branch Manager; his normal duties did not include shipping cargo for Plaintiff; and he had not previously filled out a bill of lading. McDaniel found one of Saturn's bills of lading on the Warehouse Manager's desk and filled it in to the best of his ability. When the Saturn driver arrived, McDaniel asked the driver to review his paper work.

Saturn's standard bill of lading contained spaces for the following information relevant to this case: name and address of shipper (preprinted) and consignee, number of pieces, description, weight, rate, charges, special instructions, declared value, excess value fee, shipper's signature, and driver's signature. During several months prior to the shipment at issue, Saturn had transported numerous shipments for Plaintiff, all at a shipping rate of 92.5. On many of the bills of lading, the rate was not completed; on none of the bills of lading was the declared value completed; the bills of lading were signed by the Saturn driver but not by Plaintiff.

The reverse side of the bill of lading contained the "Conditions of Contract," which are standard within the industry. One of these conditions provided:

> In consideration of Forwarder's rate for the transportation of any shipment, ..., the shipper and all other parties having any interest in the shipment agree that the limit of Forwarder's liability shall be the lesser of:
>
> (a) the amount of any damages actually sustained; or,
>
> (b) whichever of the following is greater:
>
> (1) the shippers declared value stated on the face hereof; or
>
> (2) 50¢ per pound multiplied by the weight of the damaged or lost goods only....

Plaintiff knew that transportation pursuant to a class 92.5 freight rate would limit Saturn's liability for lost or damaged goods to $.50 per pound unless a greater value was declared. Plaintiff also assumed that the shipment at issue would be shipped pursuant to class 92.5.

McDaniel completed bill of lading number 289318 to reflect the consignees name and address, number of pieces ("1"), description ("pallet 4 boxes"), and weight ("200 LB"). He further noted that the shipment should be delivered "1–10–97." He did not complete the declared value, nor did he sign the bill of lading. The bill of lading was signed and dated by the driver, indicating that the shipment was received in good condition. The cargo was loaded onto Saturn's truck.

Saturn delivered the shipment to Truck Air in Atlanta for delivery to Miami. Truck Air was operating as an agent of Saturn with respect to the shipment. On January 10, 1997, the Truck Air vehicle purportedly carrying the shipment arrived in Miami without the goods. The shipment had a market value of $31,040.00.

When the shipment did not arrive, Gary Watkins, president of Plaintiff, began to investigate and contacted Steve Geis, general manager of Saturn. The parties disagree as to what was said during the telephone conversations between the two men. Plaintiff did not file a formal claim at that time. At an undetermined time, Plaintiff demanded of Saturn payment of the full value of the shipment.

On February 14, 1997, Saturn sent Plaintiff a check for $100.00. The back of the check stated:

> Endorsement or negotiation of this instrument shall constitute a full and final release of any and all claims, demands, and rights of action that the payee, its privies, and its assigns, may have, whether known or unknown, existing against Saturn Freight Systems, Inc., its officers, directors, employees and agents in relation to any loss or other injury arising from the circumstances giving rise to Saturn's Claim # 0360, SFS PRO # 289318.

The check was received at Plaintiff's Norcross location and forwarded by Plaintiff to its Charlotte location. It was endorsed by Plaintiff's accounts receivable clerk and deposited into Plaintiff's account. The check cleared and was paid on February 20, 1997.

On May 7, 1997, Saturn filed a Cargo Loss & Damage Claim with Truck Air for $100.00. On June 13, 1997, Truck Air sent Saturn a check for $100.00 with a letter stating that the check represented "payment in full" for the claim. The check cleared and was paid on June 20, 1997.

Plaintiff filed the complaint in this case on January 8, 1999, seeking to recover jointly and severally from Defendants the full value of the shipment pursuant to 49 U.S.C. § 14706. On May 13, 1999, Saturn filed a cross claim against Truck Air seeking indemnity for any additional amounts it may be required to pay Plaintiff.

## LEGAL STANDARDS AND ANALYSIS

### I. *Summary Judgment*

Courts should grant summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears "the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of [the record] 'together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In determining whether the moving party has met its burden, the court views the evidence in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Moreover, "[r]easonable doubts as to the facts should be resolved in favor of the nonmoving party," *Borg–Warner Acceptance Corp. v. Davis,* 804 F.2d 1580, 1582 (11th Cir.1986), "and all justifiable inferences are to be drawn in his favor," *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987). The unsupported, self-serving statements of the party opposing summary judgment are insufficient to avoid summary judgment. *Midwestern Waffles, Inc. v. Waffle House, Inc.,* 734 F.2d 705, 714 (11th Cir.1984).

Once the moving party has met this initial burden, the "burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark,* 929 F.2d 604, 608 (11th Cir.1991). Whether facts are material is determined by the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is not genuine if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* at 249–50, 106 S.Ct. 2505.

### II. *Liability of Saturn and Truck Air*[1]

The Carmack/Cummins Amendment to the Interstate Commerce Act provides that a "carrier providing transportation ... shall issue a receipt or bill of lading for property it receives for transportation" and that the carrier is "liable to the person entitled to recover under the receipt or bill of lading ... for the actual loss or injury to the property." 49 U.S.C. § 14706(a)(1). The Amendment permits a carrier to "establish rates ... under which the liability of the carrier for such property is limited." 49 U.S.C. § 14706(c)(1)(A).

> There are four steps a carrier must take to limit its liability under the Carmack Amendment: (1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtain the shipper's agreement as to his choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment.

*Bio–Lab, Inc. v. Pony Exp. Courier Corp.,* 911 F.2d 1580, 1582 (11th Cir.1990).

The first step is no longer applicable because the ICC Termination Act of 1995 abolished the Interstate Commerce Commission. Pub.L. No. 104–88 § 101, 109 Stat. 803 (1995).[2] The evidence before the Court shows that Saturn issued a bill of

---

**1.** Plaintiff suggests that the Court should find that the bill of lading is void because Saturn breached its agreement with Plaintiff not to use a third party to deliver Plaintiff's goods. The Court need not address this issue as there is no evidence in the record of such an agreement.

**2.** Plaintiff suggests that Saturn has not affirmatively shown that it would have produced "a copy of the rate, classification, rules, and

lading to Plaintiff before the shipment was moved, thus meeting the requirements of the fourth step.

Saturn's bill of lading, which McDaniel found on the desk of Plaintiff's warehouse manager, had been previously used by Plaintiff on numerous occasions. The bill of lading clearly stated that Saturn's liability to Plaintiff was limited to (a) the lesser of actual damages or (b) the greater of (1) the value declared on the front of the bill of lading or (2) $.50 per pound times the weight of the lost goods. Plaintiff assumed that the shipment would be shipped pursuant to freight class 92.5 and knew that transportation pursuant to a class 92.5 freight rate would mean that a $.50 per pound released valuation rate would apply to claims for lost or damaged cargo unless a greater value was declared.

Plaintiff contends McDaniel, who completed the bill of lading, did not know that the choices of liability were stated on the back as he had never before filled out a bill of lading. Plaintiff further contends that it was therefore not given a reasonable opportunity to choose and that it did not agree to limit Saturn's liability.

On the evidence before the Court, Plaintiff's contentions are unpersuasive. McDaniel was asked by Plaintiff to stay late at the Norcross location to permit Saturn to pick the shipment up on January 9, 1997. Although McDaniel had not previously completed one of Saturn's bills of lading, Plaintiff had used them on many occasions in the recent past and knew that failure to declare a value would limit Saturn's liability. In light of its own admitted knowledge, Plaintiff cannot use McDaniel's ignorance to impose additional liability on Saturn. This conclusion is bolstered by Plaintiff's consistent choice on prior shipments not to declare a value and thus to accept Saturn's limited liability in exchange for a lower shipping rate. The evidence before the Court shows that Sat-

urn met the requirements of the second and third steps necessary to limit its liability.

## CONCLUSION

Saturn met all of the requirements to limit its liability to $.50 per pound for the shipment at issue. Saturn's total liability to Plaintiff was therefore $100.00. Saturn paid Plaintiff $100.00 to settle Plaintiff's claim for the loss of its goods, and Truck Air reimbursed Saturn for the $100.00 paid to Plaintiff. The Court therefore GRANTS the motions of Saturn and Truck Air for summary judgment as to Plaintiff's claims [20–1, 21–1] and DENIES all other motions and requests as moot [19–1, 21–2, 22–1, 38–1].

**Clerk of Court** is directed to enter judgment for Defendants. This closes the case.

---

practices upon which any rate applicable to a shipment ... is based" as required by 49 U.S.C. § 14706(c)(1)(B). There is, however, no evidence in the record that Plaintiff ever

requested a copy of Saturn's "rate, classification, rules and practices," and the copy only need be provided "on request of the shipper." *Id.*