Great Am. Ins. Agency v United Parcel Serv. (2004 NY Slip Op 24011)

Great Am. Ins. Agency v United Parcel Serv.

2004 NY Slip Op 24011 [3 Misc 3d 301]

January 20, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, June 2, 2004

[*1]
Great American Insurance Agency, as Subrogee of NASR Bros. Jewelers, Inc., Plaintiff,
v
United Parcel Service et al., Defendants.
Supreme Court, New York County, January 20, 2004

APPEARANCES OF COUNSEL

Piper Rudnick, LLP, New York City (Edward F. Maluf of counsel), for defendants. Gerard D. De Santis, Carle Place, for plaintiff.

{**3 Misc 3d at 301} OPINION OF THE COURT

Diane A. Lebedeff, J. 
{**3 Misc 3d at 302}Significant legal changes have impacted the once settled area of law relating to the tariffs of many interstate common carriers, and those changes bear upon the disposition of this summary judgment motion by defendant United Parcel Service (UPS).
The facts are simple. Plaintiff alleges that, in September of 1998, its insured, the subrogor, delivered two packages of jewelry, including diamond rings, to UPS for delivery in New York to defendant European Gemological Labs. When delivered, one package was "empty and without its contents," and bore signs it had been opened and resealed while in transit (notice of loss, letter dated Mar. 10, 1999). UPS reportedly disallowed the claim by letter dated April 20, 1999; plaintiff objects to the manner of service of the letter of disallowance as improper. Plaintiff, after paying $18,123.83 for the loss, commenced this action on September 21, 2001, more than two years after the loss was discovered and more than two years after the disputed notice of disallowance of the claim.
Relying upon a two-year contractual limitations period contained in a UPS tariff which is stated to be effective as of July 29, 1998 (the 1998 UPS tariff), UPS argues it is entitled to summary judgment under the principle that all of its customers are charged with knowledge of its tariff and that its tariffs govern all of its shipping agreements. The matter is not as clear-cut as UPS suggests.

Federal Law Governing Interstate Carriers

Because UPS, an express or package carrier, is a common carrier engaged in interstate [*2]commerce, the legal issues posed here must be decided under federal law. To establish a framework for understanding the statutes and the case law which has emerged from both state and federal courts, the impact of sweeping changes in governing federal statutes and statutory amendments must be recognized and emphasized.
The entire regulatory system applicable to interstate common carriers was altered by the 1995 elimination of the Interstate Commerce Commission (ICC) by the ICC Termination Act of 1995 (49 USC § 10101 et seq., as added by Pub L 104-88, 109 US Stat 803]). As of January 1, 1996, the ICC was dissolved and ICC functions either were eliminated or transferred to subdivisions of the United States Department of Transportation, including a newly created Surface Transportation Board which assumed jurisdiction over a number of surface transportation regulatory and adjudicatory matters.{**3 Misc 3d at 303}
A year earlier, the Trucking Industry Regulatory Reform Act of 1994 had eliminated the requirement for filing of tariffs of motor carriers, other than household goods carriers (Pub L 103-311, tit II, 108 US Stat 1673). This change also nullified subject carriers' ICC filed tariffs as of August 26, 1994 (49 USC § 13710 [a] [4] ["Any tariff on file with the Interstate Commerce Commission on August 26, 1994, and not required to be filed after that date is null and void beginning on that date"]; see In re EVIC Class Action Litig., 2002 WL 1766554, 2002 US Dist LEXIS 14049 [SD NY, July 31, 2002] [in which UPS was the named defendant]). The ramifications of this change will be addressed below.
Notwithstanding these two changes, the statute which has long governed the broad area of carrier liability to customers remained and remains in effect. Since the enactment of the 1906 Carmack Amendment to the Interstate Commerce Act (now appearing at 49 USC § 14706, and still known as the Carmack Amendment), federal policy has dictated that identified common carriers provide their customers with full value compensation for loss and damage, except as to limitations on carrier liability which are statutorily permitted. A full description of the past and current liability policies, and the numerous amendments to the Carmack Amendment, appears in the United States Department of Transportation's Cargo Liability Study (Aug. 1998). It is well established that the Carmack Amendment disputes pose a federal question, and no factor here requires consideration of the still active debate as to whether outrageous intentional tort and punitive damage claims can be raised under state law (see, recognizing conflict, Hughes v United Van Lines, Inc., 485 US 913, 914 [1988] [White, J., dissenting on denial of certiorari], and George W. Wright, Slouching Toward a Morass: The Case for Preserving Complete Carmack Preemption, 1 DePaul Bus & Com LJ 177 [2003]).
With this background, the court can proceed to consider the UPS request for summary judgment. The standard for evaluating motions for summary judgment is well established. "To obtain summary judgment it is necessary that the movant establish [a] cause of action or defense 'sufficiently to warrant the court as a matter of law in directing judgment' in [movant's] favor (CPLR 3212, subd [b]), and [movant] must do so by tender of evidentiary proof in admissible form" (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067 [1979]).{**3 Misc 3d at 304}

Unfiled Tariff as a Specialized Contract

It is within the new legal context described above that UPS urges its 1998 UPS tariff is protected by the "filed rate doctrine." Under that doctrine, "[t]he rules, regulations and rates filed [*3]by carriers with the I. C. C. form part of all contracts of shipments and are binding on all parties concerned, whether the shipper has notice of them or not, for they have the force and effect of law" (Norca Corp. v Pilot Frgt. Carriers, 63 Misc 2d 684, 686 [Civ Ct, NY County 1970]; Domani Jewelers v United Parcel Serv., 147 Misc 2d 433 [Sup Ct, NY County 1990]). This doctrine, as generally described in other contexts, also "bars judicial challenges under the common law to a rate fixed by a regulatory agency" (Byan v Prudential Ins. Co. of Am., 242 AD2d 456 [1st Dept 1997], citing Keogh v Chicago & Northwestern Ry. Co., 260 US 156 [1922]), includingwhere embodied in a tariff filed with an applicable regulatory agencyto "charges as well as the classifications, practices and regulations affecting such charges" and any listing of services to be provided to customers (Kross Dependable Sanitation v AT&T Corp., 268 AD2d 874, 875 [3d Dept 2000], citing American Tel. & Tel. Co. v Central Off. Tel., 524 US 214 [1998]).
It naturally flows that, if no tariff is filed with a regulatory agency, the filed rate doctrine cannot apply to an unfiled tariff. It has been recognized, as a matter of law, that interstate shipping enterprises can no longer rely on a presumption that the customer has knowledge of a tariff (Tempel Steel Corp. v Landstar Inway, Inc., 211 F3d 1029, 1031 [7th Cir 2000]; Dean Foods Co. v Consolidated Freightways Mtr., 29 F Supp 2d 495, 496 [ND Ill 1998] [because binding tariffs are no longer required, there is no presumption that a customer would know what they are]).
Here, facial inspection of the UPS 1998 tariff and its date of issuance is sufficient to establish that it was not eligible for filing when issued and, hence, was not filed. Unfiled tariffs essentially can become part of a carrier's "standard contractual terms, which some call 'tariffs' out of habit, but which have no effect apart from their status as [a part of such] contracts" (see Tempel Steel Corp. v Landstar Inway, Inc., 211 F3d 1029, 1030 [7th Cir 2000]). A carrier's contract is normally in the form of a receipt or bill of lading (49 USC § 14706 [a] [1] ["A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property {**3 Misc 3d at 305}and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of lading"]).
Notwithstanding the need to undertake a contract analysis here, it must be stressed that UPS has only the limited obligation to provide the actual tariff upon the request of the customer (49 USC § 14706 [c] [1] [B] [a "motor carrier . . . shall provide . . . to the shipper, on request of the shipper, a written or electronic copy of the rate, classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the shipper and the carrier, is based"]). As explained in EFS Natl. Bank v Averitt Express, Inc. (164 F Supp 2d 994, 1000-1001 [WD Tenn 2001]), a detailed examination of the legislative history of the 1994 Trucking Industry Regulatory Reform Act leads to the single conclusion that a considered choice was made when Congress imposed upon the customer the responsibility of determining the terms of a motor carrier's tariff.
For a carrier's unfiled tariffs, the contractual element is satisfied if the customer is alerted by a reference to, or incorporation by reference of, such tariff on a receipt or bill of lading (Fireman's Fund McGee v Landstar Ranger, Inc., 250 F Supp 2d 684, 689 [SD Tex 2003] [incorporating by reference the uniform straight bill of landing which provided shortened period [*4]to file claim]; see, both involving a tariff limiting value of lost goods, Converting Sys., Inc. v Hot-Line Frgt. Sys., Inc., 344 Ill App 3d 1037, 801 NE2d 155 [1st Dist 2003], and EFS Natl. Bank v Averitt Express, Inc., supra, 164 F Supp 2d at 1002). An even more modern alternativean agreement to a tariff by acquiescing to a license upon the opening of a shrink-wrapped UPS software package and the installation of the softwarehas also been found sufficient for contract purposes (Mudd-Lyman Sales & Serv. Corp. v United Parcel Serv., Inc., 236 F Supp 2d 907, 911 [ND Ill 2002]). Rarely, additional evidence is presented regarding the customer's actual knowledge of the terms of the tariff and other relevant factors, such as prior dealings between the parties, which party drafted the contract, and the sophistication of the shipper (Comsource Ind. Foodservice Cos., Inc. v Union Pac. R.R. Co., 102 F3d 438, 444 [9th Cir 1996], cert denied 520 US 1229 [1997]; see Aida Dayton Techs. Corp. v Trism Specialized Carriers, Inc., 178 F Supp 2d 505 [D Md 2001] [denying summary judgment because material issues of fact related to various factors could not be resolved as a matter of law]).{**3 Misc 3d at 306}
This case, like most cases involving package or express carriers, does not pose complex facts. Here, UPS has presented only the tariff and advances no other documents relating to the actual transaction. Accordingly, the court is unable to determine if the 1998 UPS tariff was properly made a part of the shipping contract at issue.
Based on the foregoing, the UPS reliance on the filed rate doctrine is unsupportable and, to the extent UPS could secure the relief sought on this record, the UPS presentation of the tariff alone cannot support dismissal of the complaint.

Restricted Limitations Periods

Even if all contract documents were presented, the question remains whether the text of the UPS 1998 tariff properly limits the period in which the customer can bring suit. A portion of the Carmack Amendment bars a carrier from limiting a customer's time to bring a civil action to less than two years from denial of a customer's claim (49 USC § 14706 [e] [1] ["A carrier may not provide by rule, contract, or otherwise . . . a period of less than 2 years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice" (emphasis added)]).
In this instance, the UPS 1998 tariff contains the following notice and limitations provisions:
"As a condition precedent to recovery from UPS . . . claims must be filed in writing with UPS within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against UPS . . . within two years after discovery by the shipper . . . of the occurrence which gives rise to the claim . . . Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, such claims shall be deemed waived; neither UPS nor the appropriate insurance company hereunder shall be liable, and such claims will not be paid." (Emphasis added.)
[*5]It is undeniable that this limitation in the 1998 UPS tariff fails to comply with the minimum requirements of the Carmack Amendment. The discovery of a loss necessarily is earlier than the denial of a subsequent claim for that loss. The 1998 UPS tariff's reference to two years after discovery of the loss by the customer {**3 Misc 3d at 307}is impermissibly shorter than the Carmack Amendment's minimum threshold of two years after a notice of disallowance.
Absent proper support for a carrier's contractually shortened limitations period, the court must apply normal civil statutes of limitation (see Norpin Mfg. Co., Inc. v CTS Con-Way Transp. Servs., Inc., 68 F Supp 2d 19, 25 [D Mass 1999] [where the carrier fails to exercise its statutory rights to provide a nine-month period for filing claims, "the court is not inclined, without more, to constructively impose a time limit"]). This holding is consistent with New York's general principle of contract law that courts may not rewrite the terms of an agreement (Halkedis v Two E. End Ave. Apt. Corp., 137 AD2d 452, 453 [1st Dept 1998], affd 72 NY2d 933 [1988]), nor "by construction add or excise terms, nor distort the meaning of those used and thereby 'make a new contract for the parties' " (Morlee Sales Corp. v Manufacturers Trust Co., 9 NY2d 16, 19 [1961]). Additionally, the rules of construction applicable to a tariff would bar such an attempt (Giacona v Marubeni Oceano [Panama] Corp., 623 F Supp 1560, 1569 [SD Tex 1985] ["a tariff should be construed strictly against the drafter of the tariff, as a corollary to the rule that written instruments will be construed strictly against their drafters"]).
Because the shortened limitation of claim period must fall, it is not necessary for the court to request submission of the written disallowance of plaintiff's claim, which normally must be reviewed to determine whether a carrier triggered a shortened contractual limitations clause by issuing a written communication which is "a clear, final and unequivocal disallowance" of the claim (Combustion Eng'g, Inc. v Consolidated Rail Corp., 741 F2d 533, 537 [2d Cir 1984]). And, for the same reason, the court need not reach the objection that the disallowance was not properly served upon the customer.
It is noted that, while UPS now presents the 1998 tariff as the relevant document, it originally moved based on an earlier and different tariff which was effective as of February 6, 1996 (the 1996 UPS tariff), which had a suit limitation provision proper under the Carmack Amendment. In support of this motion, UPS now provides only a bare bones affidavit of a person identified as a damage recovery group manager at the Metro New York facility, which simply states that "the UPS tariff" is attached, without further identifying the particular tariff or plainly stating that the 1998 UPS tariff was in effect on the date {**3 Misc 3d at 308}of the shipment in issue. Given the earlier mistake, and the absence of any bill of lading referencing any particular UPS tariff, the court does not hereby hold that the 1998 UPS tariff advanced is in fact the tariff applicable to the claim raised here.
Based upon the foregoing, defendant's motion for summary judgment is denied.