IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00388-CV

 

Texas Tape & Label Co.,

                                                                                    Appellant

 v.

 

Central Freight Lines, Inc.,

                                                                                    Appellee

 

 

 



From the 414th District
Court

McLennan County, Texas

Trial Court No. 2006-3594-5

 



MEMORANDUM  Opinion



 








            Central Freight Lines, Inc. damaged, and
subsequently lost, a package shipped by Texas Tape & Label Co.  Texas Tape
filed a claim to recover $24,930 in damages.  Claiming that liability was
limited to $25 per pound, Central tendered the sum of $3,750 for the loss of the
150-pound package.  Texas Tape sued Central to recover the remaining $21,180.  After
a bench trial, the trial court ruled in favor of Central.  In one issue, Texas
Tape contends that the trial court erred by finding that Central’s liability is
limited to $25 per pound.  We affirm.

ANALYSIS

            The Carmack Amendment “subjects
a motor carrier transporting cargo in interstate commerce to absolute liability
for ‘actual loss or injury to property.’”  Hughes Aircraft Co. v. N. Am. Van Lines, Inc., 970 F.2d 609, 611 (9th Cir. 1992);
see 49 U.S.C.S. § 14706
(LexisNexis 2004).  To limit its liability under the Carmack Amendment, a
carrier must: (1) maintain a tariff within the prescribed guidelines of the
Interstate Commerce Commission; (2) obtain the shipper’s agreement as to his
choice of liability; (3) give the shipper a reasonable opportunity to choose
between two or more levels of liability; and (4) issue a receipt or bill of
lading prior to moving the shipment.
 Hughes v. United Van Lines, Inc., 829 F.2d 1407, 1415 (7th Cir.
1987).

Texas Tape contends that Central fails
this test because it neither obtained Texas Tape’s agreement as to its choice
of liability nor gave Texas Tape a reasonable opportunity to choose between
different levels of liability.          

            A reasonable opportunity to
choose arises where “the shipper had both reasonable notice of the liability
limitation and the opportunity to obtain information necessary to making a
deliberate and well-informed choice.”  Hughes
Aircraft, 970 F.2d at 612.  ”The agreement must evidence
an ‘absolute, deliberate and well-informed choice by the shipper.’”  Id. 
A bill of lading is the “form most frequently used for such agreements.”  Rohner Gehrig Co. v. Tri-State Motor
Transit, 950 F.2d 1079, 1082 (5th Cir. 1992).  “The choice of
liability is inextricably intertwined
with a reasonable
opportunity to choose.”  Id. at 1083.

Whether the bill of lading contains a
declared value box is tantamount to whether the shipper had a reasonable
opportunity to choose:  

If the shipper fails to fill in the
blanks on the bill of lading, there is no “value established by written or
electronic declaration of the shipper.” Because the shipper is charged with
notice of the carrier’s tariff, a provision in a tariff which limits liability
to a certain amount absent a declaration of value in the bill of lading
constitutes a “written agreement between the carrier and shipper,” limiting the
carrier’s liability to the value provided in the tariff.  In that situation,
the declared value box provides the reasonable opportunity to choose a higher
level of liability, and the shipper’s expectation that the carrier would
be fully liable for any potential loss despite a failure to declare the actual
value of the shipment is no more than a unilateral mistake. 

 

On the other hand, where
the bill of lading or other relevant document does not contain a declared value
box, an attempted liability limitation contained in the carrier’s tariff is not
effective because the carrier has not given the shipper a reasonable
opportunity to choose a higher level of liability.  In those cases there is no
unilateral mistake on the part of the shipper; instead, there is the absence of
a reasonable opportunity for the shipper to choose different levels of
coverage. 

 

Sassy Doll Creations, Inc. v. Watkins
Motor Lines, Inc., 331
F.3d 834, 842 (11th Cir. 2003) (internal citations omitted).

            Central’s tariff limits
liability to $25 per pound absent “an agreed upon excess valuation.”  The bill
of lading contains a declared value box: 

Where the rate is dependent on value,
shippers are required to state specifically in writing the agreed or declared
value of the property.  The agreed or declared value of the property is hereby
specifically stated by the shipper to be not exceeding:

$ ___________ per pound. 

 

The bill of lading further states: (1)
“RECEIVED, subject to the classifications and tariffs in effect on the date of
the issue of this Bill of Lading;” (2) “Shipper hereby certifies that he is
familiar with all the bill of lading terms and conditions in the governing
classifications and the said terms and conditions are hereby agreed to be (sic)
the shipper and accepted for himself and his assigns;” and (3) “Freight
received under this bill of lading will be transported pursuant to Central’s
applicable tariffs on file with the applicable state or federal regulatory
agencies or on file at the carrier’s principal place of business, except where
otherwise provided in any valid and effective written contract signed by
Central and its shipper.”

Texas Tape did not declare a value on
the bill of lading.  Thus, Central argues that it satisfies the Hughes
test and liability is limited to $25 per pound pursuant to its tariff.  The
trial court agreed with this position.[1] 
Texas Tape disagrees for two reasons.  

First, Texas Tape contends that any
reasonable opportunity to choose was “nullified” by Central’s reliance on an
alleged pricing agreement.  Central employee James Grossman
testified that Central handled Texas Tape’s claim under the assumption that an
existing pricing agreement limited liability to $25 per pound.  Central
abandoned this position when it discovered that Texas Tape had not signed the
agreement.  Grossman testified that if a pricing agreement were in place, the
$25 limit would be the only option, despite a declared value on the bill of
lading.  Thus, Texas Tape argues that the $25 per pound limit would have been
enforced, regardless of whether the bill of lading contained a declared value.

            However, no such pricing
agreement was in force in this case.[2] 
Additionally, “[t]he
valuation the shipper declares determines the legal rate where there are
two rates based upon valuation.”  Kansas City S. R. Co. v. Carl, 227 U.S. 639, 652, 33 S. Ct. 391, 395,
57 L. Ed. 683 (1913) (emphasis added).  In Shull v. UPS, 4 S.W.3d 46
(Tex. App.—San Antonio 1999, pet. denied), Shull argued that he was “not given a
reasonable opportunity to choose between two or more levels of liability”
because “UPS placed a value cap on computer equipment.”  Shull, 4 S.W.3d at 49.  The
Court disagreed because “Shull was given the opportunity to declare the value
of his computer at whatever value he assessed.”  Id. at 50.  “Shull was
given a reasonable opportunity
to choose between levels of liability and [] UPS obtained Shull’s
agreement as to his choice of carrier liability since it was Shull who
determined the declared value of the goods he was shipping.”  Id.

Texas Tape had the opportunity to
declare a value on the bill of lading.  See Shull, 4 S.W.3d at 50.  A declared value would have controlled. 
See Carl, 227 U.S. at 652, 33 S. Ct. at 395.  Central’s mere belief in the existence
of a pricing agreement, which turned out to be unenforceable, did not nullify
Texas Tape’s reasonable opportunity to choose.

Second, Texas Tape argues that any reasonable opportunity to choose was “destroyed” by
Central’s representations made at the time it received the package for shipment.
 Trey Metz, an owner of Texas Tape,
testified that he could not weigh the package because of its awkward shape.  At
the time of pick up, Metz communicated this problem to Central driver William Walton. 
Walton replied, “Don’t worry about it.  We’ll take care of ya.”  At least twice
more, Metz asked whether he needed to fill in anything else on the bill of
lading.  Walton replied, “No, just sign at the bottom and we’ll take care of
ya.”  In light of this testimony, Texas Tape maintains that Metz was “essentially
told not to fill in the ‘$___ per pound’ blank on the Bill of Lading.”

            However, parol evidence
cannot be used to contradict the tariff or bill of lading:

The valuation declared or agreed upon as
evidenced by the contract of shipment upon which the published tariff rate is
applied, must be conclusive in an action to recover for loss or damage a
greater sum.

 

…

 

To permit such a declared valuation to
be overthrown by evidence aliunde the contract, for the purpose of enabling the
shipper to obtain a recovery in a suit for loss or damage in excess of the
maximum valuation thus fixed, would both encourage and reward undervaluations
and bring about preferences and discriminations forbidden by the law.  Such a
result would neither be just nor conducive to sound morals or wise policies.

 

Carl, 227 U.S. at 652, 33 S. Ct. at 395; see Montalvo
v. Bekins Moving Solutions, Inc., 613 F. Supp. 2d 892, 897 (S.D.
Tex. 2009) (“As a general
rule, a shipper is conclusively bound by tariff rules of a carrier and parol
evidence cannot be received to vary the terms thereof.”).  We reject Texas
Tape’s argument.[3] 
See Atwood v. U W
Freight Line, Inc., 127
F. Supp. 2d 1155, 1162 (D. Idaho 1999) (Rejecting
plaintiff’s attempt to introduce evidence of “Mrs. Atwood’s conversation with
the U W Freight driver and Mr. Atwood’s testimony as to his understanding as to
the function of a bill of lading;” “what the Plaintiff seeks to do is create an
issue of fact by using parole (sic) evidence, i.e. what the driver may have
told Mrs. Atwood, to alter the express terms of the contract.”).

In
summary, Central’s tariff limited liability to $25 per pound absent “an agreed upon
excess valuation.”  The bill of lading contains a declared value box where
Texas Tape could state an “excess valuation.”  Despite the opportunity to
declare a value, Texas Tape left the box blank and signed the bill of lading.  We,
therefore, conclude that Texas Tape had a reasonable opportunity to choose and
Central obtained Texas Tape’s agreement as to its choice of liability.  Under
these circumstances, the trial court properly found that Central’s liability is
limited to $25 per pound.  See Sassy Doll, 331 F.3d at 842; see also
Hollingsworth & Vose Co. v. A P, 158 F.3d 617, 619 (1st Cir. 1998); Atwood,
127 F. Supp. 2d at 1161-62.  We overrule Texas Tape’s sole issue and, having addressed
all arguments preserved for appeal, we affirm the trial court’s judgment.

 

FELIPE REYNA

Justice

Before
Chief Justice Gray,

Justice Reyna, and

Judge Woodward[4]

Affirmed 

Opinion delivered
and filed December 16, 2009

[CV06]     









[1]               Texas Tape takes issue
with the following findings of fact: (1) the bill of lading “contains a clearly
marked section for a shipper to insert a declared value,” but Texas Tape did
not declare a value; and (2) Central’s tariff “limits carrier liability in the
event of loss or damage on shipments to a maximum value not exceeding $25.00
per pound” and the tariff was made available to customers.  Thus, it challenges
the trial court’s conclusion of law that “The Bill of Lading and Tariff 100
together demonstrate that the maximum Plaintiff may recover is $25 per pound,
or $3,750.00.”





[2]               Grossman also testified that even shippers
bound by a pricing agreement may declare a higher value, but will be charged a
fee for doing so.  Central driver William Walton testified that, in a situation
involving fragile freight, he would probably advise the customer to declare a
value and if the value were too high, he would call in to ensure that he could
accept the package for shipping.  

 





[3]               Even
assuming that parol evidence is admissible, Walton testified that he could
“care less” whether the box was completed, but that he would never tell a
customer, including Metz, not to declare a value.  If a customer cannot weigh
the package, Walton testified that Central weighs the package and the customer
accepts the weight.  The trial court could have concluded that Walton did not
tell Texas Tape not to declare a value on the bill of lading.  See LaCroix v. Simpson, 148 S.W.3d 731, 734 (Tex. App.—Dallas 2004, no pet.)
(“In a bench trial,
it is for the court, as trier of fact, to judge the witnesses, to assign the
weight to be given their testimony, and to resolve any conflicts or inconsistencies in the
testimony.”)  

 





[4]
              The Honorable G. Benton Woodward, Judge of the 119th District Court of Tom
Green County, sitting by
assignment of the Chief Justice of the Supreme Court of Texas pursuant to
section 74.003(h) of the Government Code.  See Tex. Gov’t Code Ann. § 74.003(h) (Vernon 2005).